



I hereby CERTIFY
that this document is
recorded in the
RECORDER'S OFFICE
of Westmoreland County
Pennsylvania

Tom Murphy • Recorder of Deeds

## OPEN-END LEASEHOLD MORTGAGE AND SECURITY AGREEMENT
### (THIS LEASEHOLD MORTGAGE SECURES FUTURE ADVANCES)

**THIS OPEN-END LEASEHOLD MORTGAGE AND SECURITY AGREEMENT** (this "Mortgage"), made the 20th day of November, 2006 and is made effective as of November 21, 2006 by COMMONWEALTH RENEWABLE ENERGY, INC., a Pennsylvania corporation, with a principal place of business located at One Fox Chapel Place, 1090 Freeport Road, Pittsburgh, PA 15238 ("Mortgagor") for the benefit of WILLIAM E. ANDERSON AND RUTH F. ANDERSON, having an office at 121 McCurdy Drive, Pittsburgh, Pennsylvania ("Mortgagee").

### WITNESSETH:

**WHEREAS**, Mortgagor is the holder of a leasehold interest in that certain property located partially in the Township of Hempfield and partially in the Township of East Huntingdon, Westmoreland County, Pennsylvania, more particularly described on **Exhibit A** (the "Property") pursuant to an Indenture of Lease between Mortgagor as Tenant and the Pennsylvania Industrial Development Authority ("PIDA") as Landlord (the "PIDA Lease"), a Memorandum of which has been recorded in the Office of the Recorder of Deeds of Westmoreland County, Pennsylvania, on _12-6-06_, 2006 at DBV _____, page ___; _Inst.# 200612060059390_

**WHEREAS**, pursuant to a certain Judgment Note dated as of even date herewith (the "Note") by and between the Mortgagor, as Borrower, and the Mortgagee, as Lender, the Mortgagee has agreed to make and the Borrower has agreed to accept the following certain loan (the "Loan") in the maximum aggregate principal amount of up to Twenty Million and 00/100 Dollars ($20,000,000.00):  (a) an Initial Acquisition Draw (as defined in the Note) in the principal amount of up to Six Million Seven Hundred Thousand and 00/100 Dollars ($6,700,000.00) to be advanced to pay Seller, Sony Electronics Inc. to acquire the leasehold interest in the Property and (b) an Initial Development Draw (as defined in the Note) of up to Thirteen Million Three Hundred Thousand and 00/100 Dollars ($13,300,000.00) to be advanced to PIDA or other public agencies as may be required under existing loans, grants, leases and other financing vehicles and for modifications to the Property to convert it to its new use; and

**WHEREAS**, as a condition to Lender's agreement to provide the Loan to Mortgagor, Mortgagor is executing and delivering this Mortgage for the purpose of securing the prompt and full payment and satisfaction of all of the following debts, liabilities, indebtedness and obligations (collectively, the "Indebtedness"): (i) all indebtedness, liabilities and obligations of Mortgagor due or to become due under this Mortgage and the Note, all other documents and instruments executed or to be executed by Mortgagor in connection with the Loan and all extensions, renewals, increases, reductions, refinancings, amendments, consolidations, modifications or supplements from time to time of any of such documents and instruments (collectively, the "Loan Documents"), (ii) Mortgagor's performance and observance of, and compliance with, all of the terms, covenants, conditions, stipulations and agreements contained in the Loan Documents, and (iii) all indebtedness, liabilities and obligations of the Mortgagor to the Mortgagee, now or hereafter existing or arising, absolute or contingent, direct or indirect, secured or unsecured, due or to become due under the Loan Documents.

{M:\CLIENTS\3303\0000 H0383685.1}



# EXHIBIT B

CRE 03680
CONFIDENTIAL

Instr:200612050055391        12/05/2006
P:2 of 29        F:$88.50        1:52PM
Tom Murphy        T200600061619
Westmoreland County RecorderC

NOW, THEREFORE, intending to be legally bound and in consideration of the Loan and other good and valuable consideration, the receipt of which is hereby acknowledged, and as security for the prompt and full payment and performance of the Indebtedness, Mortgagor does hereby give, grant, bargain, sell, warrant, alienate, demise, release, convey, assign, transfer, mortgage, hypothecate, deposit, pledge, set over and confirm unto Mortgagee, and does hereby grant unto Mortgagee a lien on and security interest in, all right, title and interest of Mortgagor in and to all of the following and all substitutions for and replacements, reversions and remainders of such property now owned or held or hereafter acquired by Mortgagor (all of the below hereafter to be referred to as the "Mortgaged Property"):

(i)        All right, title and interest of Mortgagor in, to and under the PIDA Lease, and the leasehold estate created by and under the PIDA Lease, affecting the Mortgaged Property, and all modifications, extensions and renewals of the PIDA Lease and all other options, credits, privileges and rights granted and demised to Mortgagor under the PIDA Lease; together with all of the public and private easements and rights of way, privileges, liberties, tenements, hereditaments, strips and gores of land, streets, sidewalks, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining to the Mortgaged Property, opened or proposed, and all of the estate, right, title, interest, claim or demand whatsoever of Mortgagor therein and in the Mortgaged Property and the public and private roads, streets and ways adjacent thereto, either in law or in equity, in possession or expectancy, opened or proposed;

(ii)        All buildings, structures, additions and other improvements of every kind and description, now or hereafter erected or placed on the Mortgaged Property or any part thereof (collectively, the "Improvements");

(iii)        All fixtures, goods, inventory, fittings, appliances, apparatus, equipment, machinery, chattels, building materials and articles of personal property of every kind and nature whatsoever, and replacements and substitutions therefor and proceeds thereof, and additions thereto, now or at anytime hereafter affixed or attached to or placed upon or used in any way in connection with the use, enjoyment, occupancy, operation and maintenance of the Mortgaged Property or the Improvements together with any and all warranties associates therewith (collectively, the "Chattels");

(iv)        All leases, subleases and other agreements now or hereafter in existence relating to the use, occupancy, management or possession of all or any part of the Mortgaged Property, the Improvements or the Chattels (each a "Lease" and collectively, the "Leases"), together with all rents, issues, profits, income, royalties, or revenues due or to become due from the Mortgaged Property, the Improvements, the Chattels or the Leases (collectively, "Rents"), including all proceeds of the voluntary or involuntary conversion of any part of the Mortgaged Property, the Improvements or the Chattels into cash or liquidated claims;

CRE 03681
CONFIDENTIAL

Instr:200612060059391   12/06/2006
P:3 of 29   F:$98.50   1:52PM
Tom Murphy   T20060061019
Westmoreland County RecorderC

(v)      All right, title and interest of Mortgagor in and to any and all deposits made with or other security given under any conditional bill of sale, chattel mortgage or security interest (other than that created by this Mortgage) to which any Chattels are or shall be subject, and all deposits made thereunder, together with the benefit of any payments now or hereafter made thereon;

(vi)      All right, title and interest of Mortgagor as lessee under any and all leases relating to any Chattels, together with any options to purchase the Chattels which are subject to such leases and together with the benefit of any payments now or hereafter made on such leases;

(vii)      All licenses, contracts, management agreements, franchise agreements, permits, authorizations or certificates required or used in connection with the occupancy, ownership, operation or maintenance of the Improvements;

(viii)      All awards, damages, payments and other compensation, and any and all claims therefor and rights thereto, which may result from taking or injury by virtue of the exercise of the power of eminent domain of or to, or any damage, injury or destruction in any manner caused to, the Mortgaged Property, the Improvements, or any part of the Mortgaged Property or Improvements, or from any change of grade or vacation of any street abutting to the Mortgaged Property or Improvements, all of which awards, damages, payments, compensation, claims and rights are hereby assigned, transferred and set over to Mortgagee to the fullest extent that Mortgagor may under the law so do; and

(ix)      All cash and noncash proceeds and revenues of the Mortgaged Property, Improvements, Chattels, Leases and Rents, including, without limitation, all proceeds of credit, fire or other insurance maintained by or for the benefit of Mortgagor and all unearned refund premiums and dividends which may become payable under any policies of payments under such policies which shall reduce the unearned and loss pay premiums.

AND for the purposes hereof, Mortgagor covenants to execute, acknowledge, and deliver from time to time such instruments and documents as may be necessary or desirable to assure the protection, perfection and enforcement of the liens and security interests granted unto Mortgagee in the Mortgaged Property.

TO HAVE AND TO HOLD the Mortgaged Property unto Mortgagee, its successors and assigns, FOREVER.

PROVIDED, HOWEVER, this Mortgage and the estate and interest hereby granted shall cease and have no further effect upon payment and satisfaction in full of the Indebtedness, including, without limitation, payment of the entire outstanding principal balance of, and all interest and other charges accrued on, the Loan, and performance and observance of each and every covenant, agreement, term and condition of the Loan Documents, and provided, in such case, no Event of Default (as hereinafter defined in Paragraph 16) shall have occurred and be continuing under this Mortgage.

CRE 03682
CONFIDENTIAL

Instr:200612060059391      12/06/2006
P:4 of 29        F:$88.50        1:52PM
Tom Murphy              T20060061019
Westmoreland County RecorderC

AND MORTGAGOR HEREBY FURTHER COVENANTS AND AGREES AS FOLLOWS:

1.     Representations and Warranties of Mortgagor.   Mortgagor represents and warrants to Mortgagee that:

(i)     Mortgagor is lawfully seized and possessed of an indefeasible leasehold estate in the Mortgaged Property free from all liens;

(ii)     Mortgagor has good and marketable title to the Improvements and the Chattels;

(iii)     The PIDA Lease is a valid and subsisting lease of the Mortgaged Property for the term set forth therein, is in full force and effect, has not been modified and no defaults by Mortgagor or Landlord exist thereunder;

(iv)     Mortgagor is a corporation, duly organized and validly existing and in good standing under the laws of the Commonwealth of Pennsylvania;

(v)     Mortgagor has the power, authority and legal right to own its properties and carry on the business now being conducted by it in the Commonwealth of Pennsylvania and all other jurisdictions where it conducts its business and to engage in the transactions contemplated by the Loan Documents;

(vi)     The execution and delivery of, and the carrying out of the transactions contemplated by, the Loan Documents and the performance and observance of the terms covenants, agreements and provisions of the Loan Documents (A) have been duly authorized by all necessary corporate action of Mortgagor, (B) will not conflict with or result in a breach of the terms or provisions of any existing law or any rule, regulation or order of any court or governmental body or of the Articles of Incorporation or By-Laws of Mortgagor and (C) will not cause a default under the terms of the PIDA Lease;

(vii)     This Mortgage and the other Loan Documents have been duly and validly executed and delivered by Mortgagor and constitute the legal, valid and binding obligations of Mortgagor enforceable in accordance with their terms;

(viii)     The Mortgaged Property is properly zoned for its intended use;

(ix)     No material litigation, including without limitation, bankruptcy or insolvency proceedings, is pending or threatened against Mortgagor; and

2.     Payment and Performance. Mortgagor shall pay to Mortgagee or its assignee, without offset, counterclaim or defense, the entire outstanding Indebtedness, including, without limitation, all sums now or hereafter due Mortgagee under the Loan Documents, together with all interest thereon, when the same shall become due by the terms thereof. Mortgagor will observe and promptly perform all of the terms, provisions, conditions, covenants and agreements on the part of Mortgagor to be observed and performed under the Loan Documents.

CRE 03683
CONFIDENTIAL

Instr:200612060059391    12/06/2006
P:5 of 29    F:$00.60    1:52PM
Tom Murphy    T200600061019
Westmoreland County RecorderC

3.    Open-End Mortgage- Future Advances. This Mortgage is an Open-End Mortgage as defined in Act No. 1990-126, as codified in §§8143 and 8144 of Title 42 of the Pennsylvania Consolidated Statutes (the "Open-End Act") and, as such, is entitled to the benefits of the Open-End Act. The maximum amount of Indebtedness secured by this Mortgage shall be equal to Twenty Million Dollars ($20,000,000.00), plus accrued and unpaid interest thereon. Mortgagee and Mortgagor intend that this Mortgage create a first priority lien on and security interest in the Mortgaged Property as of the date this Mortgage is recorded, subject only to the PIDA Lease and Permitted Liens, if any, and, in addition to any other Indebtedness secured hereby, this Mortgage shall cover and be security for (i) all existing and any future loans or advances that may be made by the Lender to the Mortgagor at any time or times (whether made before or after this Mortgage is delivered to the recorder for record), and all of such loans and advances shall be added to the Indebtedness as if made on the date of the execution of this Mortgage, and (ii) all unpaid balances of advances made with respect to the Mortgaged Property for the payment of taxes, assessments, maintenance charges, insurance premiums or costs incurred for the protection of the Mortgaged Property limited to costs and attorneys' fees or the lien of this Mortgage and expenses incurred by Mortgagee in connection with the occurrence of an Event of Default under this Mortgage and advances for reason of construction, alteration or renovation on the Mortgaged Property or for any other purpose; all of such loans and advances shall be added to the Indebtedness if made on the date of the execution of this Mortgage.

4.    Taxes and Other Impositions. From time to time until the Indebtedness is fully paid, Mortgagor shall pay and discharge, or cause to be paid or discharged, when and as the same shall become due and payable, under the terms of the PIDA Lease or otherwise, all taxes, assessments, sewer and water rents, all other charges (including, without limitation, charges for utilities and utility services) and claims and all other fees, levies and governmental charges, general or special, ordinary or extraordinary, foreseen or unforeseen of any kind and nature whatsoever all of the foregoing public or private, foreseen or unforeseen, of any kind and nature whatsoever (all of the foregoing collectively being referred to as "Impositions") which are or may have been, or may hereafter be charged, imposed, assessed or levied from time to time upon Mortgagor or all or any part of the Mortgaged Property, by any federal, state or local government or political subdivision thereof, or any city, town, county or municipality, or any agency, department, bureau, board, commission or instrumentality of any of the foregoing now existing or hereafter created (each a "Governmental Authority" and collectively, "Governmental Authorities") or which may otherwise become a lien on all or any part of the Mortgaged Property. Prior to the date when any Impositions could become delinquent, Mortgagor shall deliver to Mortgagee evidence satisfactory to Mortgagee of such payment, including, without limitations copies of official receipts thereof from the appropriate authorities.

5.    Insurance. (a) Mortgagor agrees to keep, or cause to be kept, the Mortgaged Property insured at all times throughout the term of this Mortgage in accordance with the requirements as set forth in the PIDA Lease.

(b)    Mortgagor shall promptly comply with and conform to (i) all provisions of each insurance policy, and (ii) all requirements of the insurers thereunder applicable to Mortgagor or any of the Mortgaged Property or to the use, manner of use, occupancy, possession, operation, maintenance, alteration or repair of any of the Mortgaged Property, even if such compliance necessitates structural changes or improvements or results in interference with the use or

CRE 03684
CONFIDENTIAL

Instr:200612060059391      12/06/2006
P:6 of 29      F:$88.50      1:52PM
Tom Murphy      T200606061019
Westmoreland County RecorderC

enjoyment of any of the Mortgaged Property, provided, however, that Mortgagor shall obtain the prior written consent of Mortgagee, such consent not to be unreasonably withheld, prior to making any of such structural changes or improvements or interfering with the use or enjoyment of any of the Mortgaged Property. Mortgagor shall not use or permit any party to use any of the Mortgaged Property in any manner which would permit the insurer to cancel any insurance policy.

6.    Escrow Payments. Without limiting the effect of Paragraphs 4 and 5 of this Mortgage, after the occurrence of an Event of Default and upon the written request of Mortgagee, Mortgagor shall pay to Mortgagee monthly with the monthly installments of principal and interest on the Loan, an amount equal to one-twelfth ($1/12^{th}$) of the annual premiums for the insurance policies referred to in Paragraph 5 and the annual real estate taxes and any other item which at any time may be or become a lien upon the Mortgaged Property (the Escrow Charges"), and, on demand from time to time thereafter, Mortgagor shall pay to Mortgagee any additional sums necessary to pay, thirty (30) days prior to when same are due, the Escrow Charges, all as reasonably estimated by Mortgagee. The amounts so paid shall be security for the Escrow Charges and shall be used in payment thereof, provided, however, that Mortgagee shall be under no obligation to pay the Escrow Charges unless there is on deposit sufficient funds to pay the Escrow Charges when due; any insufficiency shall be paid by Mortgagor to Mortgagee upon demand. Mortgagee shall hold any amount so paid to Mortgagee in a non-interest bearing account (the "Escrow Account"). All deposits held in the Escrow Account shall not be deemed to be trust funds and may be commingled with general funds of Mortgagee. Upon the occurrence of an Event of Default, Mortgagee shall have the right to apply any amount held in the Escrow Account against the Indebtedness in such order as Mortgagee may deem fit, and Mortgagor hereby grants to Mortgagee a lien upon and security interest in such amounts for such purpose. At Mortgagee's option, Mortgagee from time to time may waive, and after any such waiver may reinstate, the provisions of this paragraph requiring the monthly payments. In the event the interest of Mortgagor in the Mortgaged Property is sold or otherwise transferred, voluntarily or involuntarily, then all of the interest of Mortgagor in and to the Escrow Charges shall vest in the successor to the interest of Mortgagor in the Mortgaged Property; subject, nevertheless, to the rights of Mortgagee hereunder.

7.    Maintenance and Repairs; Compliance with Legal Requirements. (a) Mortgagor shall keep, preserve and maintain, or shall cause to be kept, preserved and maintained, the Mortgaged Property, the Improvements, the Chattels and the sidewalks, curbs and vaults, if any, in good condition and repair, reasonable wear and tear excepted. Mortgagor shall promptly comply with and conform to or cause to be complied with and conformed to all present and future laws, statutes, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements, even if unforeseen or extraordinary, of every Government Authority, court, agency, department, commission, board and officer, any national or local Board of Fire Underwriters, or any other body exercising functions similar to those of any of the foregoing, and all covenants, restrictions and conditions which may be applicable to Mortgagor or to any of the Mortgaged Property, or to the use, manner of use. occupancy, possession, operation, maintenance, alteration, repair or reconstruction of any of the Mortgaged Property (collectively, "Legal Requirements"). Mortgagor hereby represents and warrants the Mortgaged Property complies with all applicable Legal Requirements.

[M:\CLIENTS\03031\0000 H0383685:1]

6

CRE 03685
CONFIDENTIAL

Instr:200512060059391        12/06/2006
P:7 of 29        F:$88.50        1:52PM
Tom Murphy                T200500061019
Westmoreland County RecorderC

(b)     Except to the extent permitted in this Mortgage, Mortgagor will not, unless the cost thereof is less than $15,000.00, cause or permit any Improvement or other Property now or hereafter covered by the lien of this Mortgage to be removed or demolished or structurally changed or altered, in whole or in part, or make any additions to any such Improvements, without the prior written consent of Mortgagee. Mortgagor shall not allow any Chattel to be removed, severed or destroyed unless, simultaneously with, or prior to, any such permitted removal, any such Chattels shall be replaced with other Chattels to perform the function of the Chattels removed and of a value at least equal to that of the Chattels replaced and free from any title retention or security agreement or other encumbrance. By such removal, Mortgagor shall be deemed to have subjected such Chattels to the lien and security interest of this Mortgage. Mortgagor will not abandon or cause or permit any waste to the Mortgaged Property. Mortgagor will pay all license fees and similar municipal charges for the use of the Mortgaged Property and other areas now or hereafter comprising part thereof or used in connection therewith and will not unless so required by any Governmental Authority having jurisdiction discontinue such use without prior written consent of Mortgagee.

(c)     Mortgagor shall have the right, after prior written notice to Mortgagee, to contest by appropriate legal proceedings diligently conducted in good faith, without cost or expense to Mortgagee, the validity or application of any Legal Requirement and which does not subject Mortgagee to any criminal or civil liability, subject to the following:

(i)     If by the terms of any such Legal Requirement, compliance may legally be delayed pending the prosecution of any such proceeding without the incurrence of any lien against the Mortgaged Property (as may be determined in Mortgagee's sole judgment), Mortgagor may delay compliance until the final determination of such proceeding.

(ii)     If any lien or charge against the Mortgaged Property would or might incurred by reason of any such delay (as may be determined in Mortgagee's sole judgment), Mortgagor nevertheless may contest as provided in this Paragraph 7(c) and delay as aforesaid, provided Mortgagor furnishes to and maintains with Mortgagee security, at all times reasonably satisfactory to Mortgagee, against any loss or injury by reason of such contest or delay, and Mortgagor prosecutes such contest with due diligence.

(d)     Mortgagor will promptly perform and observe, or cause to be performed or observed, all of the terms, covenants and conditions of all instruments of record affecting the Mortgaged Property, including, without limitation, the PIDA Lease, the non-compliance with which may affect the security of this Mortgage, or which may impose any duty or obligation upon Mortgagor or any lessee or other occupant of the Mortgaged Property or any part of the Mortgaged Property, and Mortgagor shall do or cause to be done all things necessary to preserve intact and unimpaired any and all, easements, appurtenances and other interests and rights in favor of or constituting any portion of the Mortgaged Property.

8.     Payments by Mortgagee.  If Mortgagor fails to promptly pay, or cause to be paid, the payments required herein to Mortgagee or any Impositions as required in Paragraph 4, or to furnish and pay, or cause to be furnished and paid, for the insurance as required in Paragraph 5,

CRE 03686
CONFIDENTIAL

Instr:200612060059391          12/06/2006
P:8 of 29      F:$88.90          1:52PM
Tom Murphy              T200600616919
Westmoreland County RecorderC

or to keep, or cause to be kept, the Mortgaged Property in good condition and repair as provided in Paragraph 7, Mortgagee may, at its option, but without any duty to do so, pay any or all such items, together with any penalties and interest thereon, and procure and pay for such insurance and repairs and take such steps as may be necessary to prevent waste. Mortgagee may at any time and from time to time at its option, but without any duty to do so, advance such additional sum or sums as Mortgagee in its sole discretion may deem necessary to preserve and protect the Mortgaged Property and protect the security of this Mortgage. All sums paid or advanced by Mortgagee pursuant to this Paragraph 8 shall be repaid by Mortgagor to Mortgagee on demand, together with interest thereon at the highest rate being charged under the Note, and such sums shall be added to the Indebtedness and shall be a lien on the Mortgaged Property. The production of a receipt by Mortgagee shall be prima facie evidence of a payment or advance authorized hereby, and the amount and validity thereof.

9.    <u>Mechanic's and Other Liens.</u> (a) Mortgagor will pay, or bond, or cause to be paid or bonded, from time to time when the same shall become due, all claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of the Mortgaged Property, or on the Rents. Mortgagor will do or cause to be done everything necessary so that the lien and priority of this Mortgage shall be fully preserved, at the cost of Mortgagor, without expense to Mortgagee.

(b)    Except for Permitted Liens, if any, or as otherwise permitted in this Mortgage, Mortgagor will not, without the written consent of Mortgagee, create or suffer to be created any security interest under the Uniform Commercial Code, as amended from time to time in effect in the jurisdiction where this Mortgage is recorded (the "<u>Code</u>"), or other lien in favor of any party other than Mortgagee, or create or suffer any reservation of title by any such other party, with respect to any Chattels, nor shall any such Chattels or property be the subject matter of any lease or other transaction whereby the ownership of any beneficial interest in any of such property is held by any person or entity other than Mortgagor (or Mortgagee as provided herein). All such property shall be purchased for cash or in such manner that no Lien shall be created on such property except the lien of this Mortgage, unless Mortgagee shall agree in writing to the contrary before a contract to purchase any such property is executed.

(c)    Mortgagor shall promptly cause to be paid and discharged any Lien or charge whatsoever which by any present or future law may be or become superior to, or on a parity with this Mortgage, either in lien or in distribution out of the proceeds of any judicial sale of the Mortgaged Property, or any part of the Mortgaged Property.

10.    <u>Use of Property; Leases.</u> (a) Mortgagor will use the Mortgaged Property and the Improvements, or cause the Mortgaged Property and the Improvements to be used, continuously for an ethanol production facility and uses incidental thereto, and Mortgagor shall not use or permit the use of the Mortgaged Property and the Improvements for any other principal use without the prior written consent of Mortgagee.

(b)    As further security for the payment of the Indebtedness, Mortgagor hereby assigns to Mortgagee the Rents, together with the Leases now or hereafter in effect and any and all deposits held as security under said Leases, and shall, upon demand, deliver to Mortgagee an executed counterpart of each such Lease. Nothing contained in the foregoing sentence shall be

CRE 03687
CONFIDENTIAL

Instr:200612060059391       12/06/2006
P:9 of 29      F:$98.50      1:52PM
Tom Murphy              T200600061019
Westmoreland County RecorderC

construed to bind Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation on Mortgagee (including, without limitation, any liability under the covenant of quiet enjoyment contained in any Lease or in any law of the state to which the Mortgaged Property is located in the event of sale of the Mortgaged Property pursuant to this Mortgage or that any tenant shall have been joined as a party defendant in any action to foreclose this Mortgage and shall have been barred and foreclosed thereby of all right, title and interest and equity of redemption in the Mortgaged Property), except that Mortgagee shall be accountable for any money actually received pursuant to such assignment.

(c)    Mortgagor covenants and agrees that no rights to payments Lease or Rents shall be sold, assigned, transferred, mortgaged, pledged or otherwise disposed of or encumbered, except to Mortgagee, whether by operation of law or otherwise, without the prior written consent of Mortgagee in each instance first had and obtained, and any attempt to do so shall be null and void.

(d)    Unless otherwise approved in writing by Mortgagee, any Lease of the Mortgaged Property shall be absolutely subordinate to the lien of this Mortgage and shall contain such a provision satisfactory to Mortgagee. No Lease shall be terminated, modified or amended in any way nor shall any surrender thereof be accepted by Mortgagor without the prior written consent of Mortgagee. A default by Mortgagor in the performance of any covenant in any Lease by reason of which default the Landlord has the right to cancel such Lease or to claim any diminution of or offset against future rents, shall, at the option of Mortgagee, constitute a Default, and Mortgagee shall have all the rights and remedies herein as if such default had occurred under this Mortgage.

(e)    Mortgagor shall not enter into any agreement for the management, operation, sale or marketing of the Mortgaged Property, or any part thereof, unless Mortgagor shall (i) furnish to Mortgagee a copy of any such agreement together with any other documents or information related thereto as may be requested by Mortgagee, (ii) obtain Mortgagee's prior written consent to such agreement, (iii) assign to Mortgagee, as security for the prompt and full satisfaction of the Indebtedness, all rights and interests of Mortgagor in and to such agreement, all upon terms and conditions satisfactory to Mortgagee, and (iv) use its best efforts to cause any management or marketing agent to execute a subordination agreement in favor of Mortgagee upon terms and conditions satisfactory to Mortgagee.

(f)    Mortgagor shall (i) promptly perform and observe all of the terms, covenants and conditions required to be performed and observed by Mortgagor under the PIDA Lease and do all things necessary to preserve and to keep unimpaired its rights thereunder, (ii) promptly notify Mortgagee of any default by the Mortgagor under the PIDA Lease in the performance of any of the terms, covenants or conditions on the part of Mortgagor to be performed or observed thereunder or of the giving of any notice by the Landlord under the PIDA Lease to Mortgagor of such Landlord's intention to end the term thereof, and (iii) promptly cause a copy of each such notice given by the Landlord to Mortgagor under the PIDA Lease to be delivered to Mortgagee.

(g)    If Mortgagor shall fail promptly to perform or observe any of the terms, covenants limitations, or other conditions required to be performed by it under the PIDA Lease including,

CRE 03688
CONFIDENTIAL

Instr:200612060059391        12/06/2006
P:10 of 29        F:$88.50        1:52PM
Tom Murphy                        T20060061819
Westmoreland County RecorderC

without limitation, payment of all basic rent and additional rent due thereunder, Mortgagee may take such action as is appropriate to cause such terms, covenants or conditions to be promptly performed or observed on behalf of Mortgagor but no such action by Mortgagee shall release Mortgagor from any default under this Mortgage. Upon receipt by Mortgagee from the Landlord of any notice of default by Mortgagor under the PIDA Lease, Mortgagee may rely thereon and take any action as aforesaid to cure such default even though the existence of such default or the nature thereof is questioned or denied by Mortgagor or by any party on behalf of Mortgagor.

(h)     Mortgagor shall not, without the prior written consent of Mortgagee, surrender its leasehold estate and interests under the PIDA Lease, terminate or cancel the PIDA Lease, nor modify, change, supplement, alter or amend the PIDA Lease either orally or in writing.

(i) No release or forbearance of any of Mortgagor's obligations under the PIDA Lease, pursuant to the PIDA Lease or otherwise, shall release Mortgagor from any of its obligations under this Mortgage.

(j)     **IF MORTGAGOR ACQUIRES THE FEE TITLE OR ANY OTHER ESTATE, TITLE OR INTEREST IN THE MORTGAGED PROPERTY, THIS MORTGAGE AND THE LIEN CREATED HEREBY SHALL NOT BE DESTROYED OR TERMINATED BY APPLICATION OF THE DOCTRINE OF MERGER, AND IN SUCH CASE THIS MORTGAGE AND THE LIEN CREATED HEREBY SHALL ATTACH TO AND COVER THE FEE TITLE OR SUCH OTHER ESTATE SO ACQUIRED, AND MORTGAGOR HEREBY GRANTS, BARGAINS, SELLS AND CONVEYS TO MORTGAGEE THE FEE TITLE OR SUCH OTHER ESTATE SO ACQUIRED, SUBJECT TO THE TERMS OF THIS MORTGAGE, AND SUCH FEE TITLE OR OTHER ESTATE SHALL, WITHOUT ANY FURTHER CONVEYANCE, BECOME AND BE PART OF THE MORTGAGED PROPERTY HEREBY CONVEYED. IF REQUESTED BY MORTGAGEE, AT THE TIME OF MORTGAGOR'S ACQUISITION OF THE FEE TITLE TO THE MORTGAGED PROPERTY, MORTGAGOR SHALL EXECUTE AND DELIVER TO MORTGAGEE A MORTGAGE GRANTING MORTGAGEE A FIRST PRIORITY LIEN ON THE MORTGAGED PROPERTY, SUCH MORTGAGE TO BE PREPARED BY MORTGAGEE IN SUBSTANTIALLY THE FORM AND SUBSTANCE OF THIS MORTGAGE.**

(k)     Mortgagor shall enforce the obligations of the Landlord under the PIDA Lease to the end that Mortgagor may enjoy all of the rights granted to it under the PIDA Lease, and will promptly notify Mortgagee of any default by the Landlord, or by Mortgagor as Tenant, in the performance or observance of any of the terms, covenants and conditions on the part of the Landlord or Mortgagor, as the case may be, to be performed or observed under the PIDA Lease and Mortgagor will promptly advise Mortgagee of the occurrence of any of the events of default enumerated in the PIDA Lease and of the giving of any notice by the Landlord to Mortgagor of any default by Mortgagor, as such Tenant, in the performance or observance of any of the terms, covenants or conditions of the PIDA Lease on the part of Mortgagor to be performed or observed and will deliver to Mortgagee a true copy of each such notice. If, pursuant to the PIDA Lease, the Landlord shall deliver to Mortgagee a copy of any notice of default given to Mortgagor, as Tenant under the PIDA Lease, such notice shall constitute full authority and protection to Mortgagee for any action taken or omitted to be taken by Mortgagee, in good faith in reliance

CRE 03689
CONFIDENTIAL

Instr:200612000005991    12/06/2006
P:11 of 29    F:$88.50    1:52PM
Tom Murphy    T200600061819
Westmoreland County RecorderC

thereon. If Mortgagor shall have notified Mortgagee that there is a bona fide dispute between Mortgagor and the Landlord under the PIDA Lease as to the existence of any default referred to in any such copy of notice of default delivered to Mortgagee, Mortgagee shall not take any action pursuant to the foregoing sentence which would prejudice the rights of Mortgagor in the event of any such dispute, unless, in the judgment of Mortgagee, the Lien of this Mortgage on the Mortgaged Property, or any part thereof, would, by reason of such forbearance, be in imminent danger of being forfeited, lost or subordinated.

(1)    Mortgagor shall give Mortgagee prompt notice of the commencement of any arbitration or appraisal proceeding under and pursuant to the provisions of the PIDA Lease. Mortgagee shall a have the right to intervene and participate in any such proceeding and Mortgagor shall confer with Mortgagee and its attorneys and experts and cooperate with them to the extent Mortgagee deems reasonably necessary for the protection of Mortgagee. Upon the request of Mortgagee, Mortgagor will exercise all rights of arbitration, if any, conferred upon it by the PIDA Lease. If at any time such proceeding shall be commenced Mortgagor shall be in default under this Mortgage, Mortgagee shall have, and is hereby granted, the sole and exclusive right to designate and appoint on behalf of Mortgagor the arbitrator or arbitrators, or appraiser, in such proceeding.

(m)    Mortgagor shall use its best efforts to obtain from the Landlord under the PIDA Lease and deliver to Mortgagee, within twenty (20) days after demand from Mortgagee, a statement in writing certifying that the PIDA Lease is unmodified and in full force and effect and the dates to which the ground rent and other charges, if any, have been paid in advance, and stating whether or not, to the best knowledge of the signer of such certificate, Mortgagor is in default in the performance of any covenant, agreement or condition contained in the PIDA Lease, and, if so, specifying each such default of which the signer may have knowledge.

(n)    Mortgagor shall, at least six (6) months prior to the last day upon which Mortgagor may validly exercise any option to renew or extend the term of the PIDA Lease, (i) exercise such option in such manner as will cause the term of the PIDA Lease to be effectively renewed or extended for the period provided by such option, and (ii) give immediate notice thereof to Mortgagee; it being expressly understood that in the event of the failure of Mortgagor so to do, Mortgagee shall have, and is hereby granted, the irrevocable right to exercise any such option, either in its own name and behalf or in the name and behalf of Mortgagor, as Mortgagee shall in its sole discretion determine; provided, however, that if Mortgagor shall pay the Indebtedness hereby secured at least six (6) months prior to the last day upon which Mortgagor may validly exercise any option to renew or extend the term of the PIDA Lease or provide Mortgagee with other collateral reasonably acceptable to Mortgagee, Mortgagor shall not be obliged to exercise any such option of renewal or extension, nor will Mortgagee have any right to exercise any such option. In the event of damage by fire or other casualty to the Mortgaged Property during the last three years of the term granted under the PIDA Lease, or any renewal thereof, Mortgagor will not exercise the election, if any, granted to it pursuant to the provisions of the PIDA Lease to terminate the same without the consent of Mortgagee.

(o)    Mortgagor shall promptly notify the Mortgagee of any change made pursuant to the provisions of PIDA Lease in the ground rent payable by the Tenant under the PIDA Lease, and in the event that any proceeds of insurance on any part of the Mortgaged Property, or any

CRE 03690
CONFIDENTIAL

Instr:200612060086991        12/06/2006
P:12 of 29        F:$88.50        1:52PM
Tom Murphy        T200600861019
Westmoreland County RecorderC

proceeds of any award for the taking by eminent domain of any part of the Mortgaged Property, shall be deposited with any person pursuant to the requirements of the PIDA Lease, Mortgagor shall promptly notify Mortgagee of the name and address of the person with whom such proceeds have been deposited and of the amount so deposited.

11.    Damage or Destruction. (a) In case of casualty resulting in damage or destruction to the Mortgaged Property, Mortgagor shall promptly give written notice of such casualty to Mortgagee generally describing the nature and cause of such casualty and the extent of the damage or destruction.

12.    Condemnation. (a)   Mortgagor shall give Mortgagee prompt "written notice of any actual or, to the extent known by Mortgagor, threatened commencement of condemnation proceedings or the exercise of the right of eminent domain with respect to all or any part of the Mortgaged Property.  In the event that the PIDA Lease shall be wholly terminated as a result of a condemnation proceeding or by exercise of any right of eminent domain (collectively, "Condemnation Proceedings"), Mortgagee may on behalf of Mortgagor participate in any such Condemnation Proceedings and may on behalf of Mortgagor adjust, contest, accept, reject or compromise any proposed award and collect and, without the concurrence of Mortgagor, receive the proceeds of such Condemnation Proceedings and endorse drafts, and Mortgagee is hereby irrevocably appointed attorney-in-fact of Mortgagor for such purposes, such power being coupled with an interest. The decision of Mortgagee with regard to the adjustment, contest, acceptance, rejection or compromise of any proposed award issued in connection with any Condemnation Proceedings shall be binding upon Mortgagor. The award that may be made in any such proceeding or the proceeds of any such proceeding shall be deposited with Mortgagee and distributed in the manner set forth in this Paragraph 12. The parties agree to execute any and all further documents that may be required in order to facilitate collection of any award or awards and the making of any such deposit with Mortgagee.

(b)    If at any time during the term of this Mortgage the PIDA Lease shall be wholly terminated as a result of a Condemnation Proceeding or by agreement between Mortgagor and Mortgagee and those authorized to exercise such right, Mortgagee shall apply such award or proceeds which it receives pursuant to Paragraph 12(a) to payment of the Indebtedness and any balance then remaining shall be paid to Mortgagor. In the event that the amount of the award or proceeds received by Mortgagee shall not be sufficient to pay the then unpaid Indebtedness, Mortgagor shall, within ten (10) days after the application of the award or proceeds as aforesaid, pay such deficiency to Mortgagee.

(c)    If at any time during the term of this Mortgage title to less than the whole or materially all of the Mortgaged Property shall be taken as a result of a Condemnation Proceeding or by agreement between Mortgagor and Mortgagee and those authorized to exercise such right which shall not result in termination of the PIDA Lease, subject to the terms of the PIDA Lease, all of the award or proceeds collected by Mortgagee pursuant to Paragraph 12(a) of this Mortgage, shall be held by Mortgagee and applied and paid over toward the cost of demolition, repair or restoration. Any balance remaining in the hands of Mortgagee after payment of such costs and demolition, repair and restoration may be retained by Mortgagee and applied in reduction of the Indebtedness. In the event that the costs of such demolition, repairs and

CRE 03691
CONFIDENTIAL

Instr:200612060089391    12/06/2006
P:13 of 29    F:$98.50    1:52PM
Tom Murphy    T200600061819
Westmoreland County RecorderC

restoration shall exceed the net amount collected by Mortgagee, Mortgagor shall pay the deficiency.

(d)    If at any time during the term of this Mortgage the temporary use of the whole or any part of this Mortgaged Property shall be taken in Condemnation Proceedings, all of the award or proceeds collected by Mortgagee pursuant to Paragraph 12(a) shall be held by Mortgagee and applied by Mortgagee toward the payment of the monthly installments of principal and interest due on the Note and such other Indebtedness as are due to Mortgagee until such time as the Indebtedness is completely satisfied and paid, except that, if such taking by Condemnation Proceedings results in changes and alterations to the Mortgaged Property or any part of the Mortgaged Property which would necessitate an expenditure to restore the Mortgaged Property or any part of the Mortgaged Property to its former condition, then such portion of the award or proceeds as, in Mortgagee's reasonable estimation, shall be necessary to cover the cost of restoration shall at the option of Mortgagee be retained by Mortgagee, without application as aforesaid, and be applied and paid over toward the restoration of the Mortgaged Property, or any part of the Mortgaged Property, to its former condition. In the event that the costs of such restoration shall exceed the net amount collected by Mortgagee, Mortgagor shall pay the deficiency.

(e)    Any award for compensation made in Condemnation Proceedings for consequential damages or for the taking of rights in, under and above the streets adjoining such Mortgaged Property, or the rights and benefits of light, air or access to said streets, or for the taking of space, or rights of such space, below the surface of, or above, the Mortgaged Property, shall be paid over to and received by Mortgagee. Such awards or compensation shall at the option of Mortgagee be applied to the reduction of the Indebtedness or paid over toward the cost of such demolition, repair and restoration of the Mortgaged Property as shall be necessitated by such taking and any balance remaining with Mortgagee shall be retained by Mortgagee and applied in reduction of the Indebtedness in the same manner as provided in Paragraph 12(c) with respect to the balance of the award or awards referred to in Paragraph 12(c).

(f)    In the case of any taking covered by the provisions of this Paragraph 12, Mortgagor and Mortgagee (to the extent Mortgagee has not been reimbursed by Mortgagor) shall be entitled as a first priority to reimbursement out of any award or awards for all reasonable costs, fees, reimbursements to Mortgagee and expenses incurred in the determination and collection of any such awards.

(g)    Any reduction in the principal sum resulting from Mortgagee's application of such condemnation award or payment as set forth in this Mortgage shall be deemed to take effect only on the date of such application. If prior to Mortgagee's receipt of such condemnation award or payment the Mortgaged Property shall have been sold to Mortgagee or its nominee on foreclosure of this Mortgage. Mortgagee shall have the right to receive and retain the entire award or payment.

13.    Preservation of Mortgagee's Rights. If Mortgagee shall become involved in any action or course of conduct with respect to the Mortgaged Property or other security for the Indebtedness in order to protect its interest therein or to defend or uphold the lien of this

CRE 03692
CONFIDENTIAL



Instr:200612060059391          12/06/2006
P:14 of 29     F:$80.50     1:52PM
Tom Murphy          T20060061019
Westmoreland County RecorderC

Mortgage or the effectiveness of any assignment under this Mortgage, including without limitation:

        (i)     commencing and prosecuting foreclosure proceedings;

        (ii)    becoming involved in bankruptcy proceedings concerning Mortgagor;

        (iii)   entering the Mortgaged Property for the care and management thereof, or

        (iv)   defending or participating as a party in any action, at law or to equity, including condemnation brought by Mortgagor or any other person or organization with respect to the Mortgaged Property (or other security for the debt secured hereby),

then Mortgagor shall, upon demand by Mortgagee, reimburse Mortgagee for all charges, costs and expenses incurred by Mortgagee in connection therewith, including without limitation reasonable attorneys' fees, and such charges, costs and expenses shall be added to the Indebtedness, bear interest at the highest rate of interest then in effect under the Loan and shall be secured by this Mortgage.

14.    Adjustments to Indebtedness. From time to time, Mortgagee may, at Mortgagee's option, without giving notice to or obtaining the consent of Mortgagor, or any junior lienholder, and without liability on Mortgagee's part and notwithstanding Mortgagor's breach of any covenant or agreement to this Mortgage, extend the time for payment of any sum required to be paid by Mortgagor to Mortgagee, or any part thereof, reduce the payment thereon, release anyone liable on any of the Indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of the Indebtedness, release from the lien of this Mortgage any part of the Mortgaged Property, take or release other or additional security and agree in writing to modify the rate of interest or period of amortization of the Loan or change the amount of or number of the monthly installments payable thereunder. Any actions taken by Mortgagee pursuant to the terms of this paragraph shall not affect (i) the obligations of Mortgagor to pay the sums secured by this Mortgage and to observe the covenants of Mortgagor contained therein, (ii) the guaranty, if any, of any person, corporation, partnership or other entity for payment of the Indebtedness. and (iii) the lien or the priority of liens hereof on the Mortgaged Property.

15.    Security Agreement. This Mortgage constitutes a security agreement under the Code and creates a security interest in all property (and the proceeds thereof) included in the Mortgaged Property which constitutes personal property. Notwithstanding any release of any or all of that property included in the Mortgaged Property which constitutes real property, or any proceedings to foreclose this Mortgage or the satisfaction of record of this Mortgage, the terms hereof shall survive as a security agreement with respect to the security interests created hereby and referred to above until the repayment or satisfaction in full of the Indebtedness. The recording of this Mortgage constitutes the filing of a financing statement as to property which is or becomes a fixture, and in furtherance thereof, for purposes of such financing statement, "Mortgagor" shall mean "Debtor", "Mortgagee" shall mean "Secured Party" and the addresses of

CRE 03693
CONFIDENTIAL

Instr:200612060059991        12/06/2006
P:15 of 29    F:$98.50        1:52PM
Tom Murphy              T200600061819
Westmoreland County RecorderC

"Debtor" and "Secured Party" are set forth in the preamble of this Mortgage. Mortgagor will execute and deliver to Mortgagee on demand, and hereby irrevocably appoints Mortgagee or any officer of Mortgagee, as attorney-in-fact of Mortgagor to execute, deliver and file such financing statements and other instruments as Mortgagee may require in order to perfect and maintain such security interests under the Code, such power being coupled with an interest.

16.    Events of Default: Remedies. (a) Each of the following events shall constitute an event of default under this Mortgage (each a "Default"):

(i)    The occurrence of an Event of Default under any one of the Loan Documents, and the same shall continue beyond any applicable period of grace.

(ii)    Breach or default in the due observance or performance of any covenant, condition or agreement contained in this Mortgage other than those referred to in other clauses of this Paragraph 16(a), and such breach or default shall continue for a period of fifteen (15) days after written notice thereof from Mortgagee to Mortgagor.

(iii)    Any representation or warranty made by or on behalf of Mortgagor in this Mortgage or the other Loan Documents or in any certificate, financial statement or other document furnished to Mortgagee in connection with the Loan Documents shall prove to have been false or misleading in any material respect when made.

(iv)    Failure to procure or maintain insurance on the Mortgaged Property pursuant to the PIDA Lease.

(v)    A transfer, sale, conveyance, assignment or other disposition in violation of Paragraph 19 of this Mortgage.

(vi)    Breach or default in the due observance or performance of any covenant, condition or agreement contained in any mortgage under which a Permitted Lien has been created, and such default shall continue beyond any applicable period of grace.

(vii)    Institution of foreclosure and/or other proceedings to enforce any liens, other than those in favor of Mortgagee, upon the Mortgaged Property.

(viii)    Receipt by Mortgagee of a written statement, prepared by a third-party in accordance with Section 8143(d) of the Open-End Act, which notifies Mortgagee of the existence of a lien on the Mortgaged Property.

(ix)    Receipt by Mortgagee of a written notice from Mortgagor pursuant to Section 8143(b) of the Open-End Act.

(x)    Breach or default in the due observance or performance of any covenant, condition or agreement contained in the Lease, and such default shall continue beyond any applicable period of grace.

CRE 03694
CONFIDENTIAL

Instr:200612060069391          12/06/2006
P:16 of 29      F:$88.80          1:52PM
Tom Murphy                   T20060061819
Westmoreland County RecorderC

(b)    Upon the occurrence of a Default, at the option of Mortgagee:

(i)    The entire Indebtedness, including without limitation, the unpaid balance of the principal, accrued interest and other sums under the Loan, this Mortgage and the other Loan Documents shall immediately become due and payable without notice or demand to Mortgagor, and shall be recoverable by Mortgagee immediately or at any time or times thereafter without stay of execution or other process;

(ii)    Mortgagee may institute an action of mortgage foreclosure, or take such other action as the law may allow, at law or in equity, for the enforcement and realization on the mortgage security or any other security which is provided for in this Mortgage or elsewhere provided for, and proceed thereon to final judgment and execution thereon for the entire unpaid balance of the Indebtedness, with interest, at the rates and pursuant to the methods of calculation specified in the Loan and this Mortgage to the date of default and after said default at the highest rate provided in the Loan together with all sums secured by this Mortgage, all costs of suit, interest at the highest rate specified in the Loan on any judgment obtained by Mortgagee from and after the date of any Sheriff's sale of the Mortgaged Property (which may be sold in one parcel or in such parcels, manner or order as Mortgagee shall elect) until actual payment is made by the Sheriff of the full amount due Mortgagee, and an attorneys' reasonable commission for collection, without further stay, any law, usage or custom to the contrary notwithstanding;

(iii)    Mortgagee personally, or by its agents or attorneys, may enter into and upon all or any part of the Mortgaged Property, and each and every part of the Mortgaged Property, and may exclude Mortgagor, its agents and servants wholly from the Mortgaged Property without liability for trespass, damages or otherwise and Mortgagor agrees to surrender possession to Mortgagee on demand after the happening of a Default; and having and holding the same may use, operate, manage and control the Mortgaged Property and conduct the business of the Mortgaged Property, either personally or by its superintendents, managers, agents, servants, attorneys or receivers; and upon every such entry, Mortgagee, at the expense of Mortgagor from time to time, either by purchase, repairs or construction, may maintain and restore the Mortgaged Property, whereof it shall become possessed as aforesaid, and likewise, from time to time, at the expense of Mortgagor may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements to the Mortgaged Property as Mortgagee may deem advisable, and in every such case Mortgagee shall have the right to manage and operate the Mortgaged Property and to carry on the business of the Mortgaged Property and exercise all rights and powers of Mortgagor with respect to the Mortgaged Property either in the name of Mortgagor or otherwise as it shall deem best; and Mortgagee shall be entitled to collect and receive all payments, Rents and/or revenue and after deducting the expenses of conducting the business of the Mortgaged Property and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments

CRE 03695
CONFIDENTIAL

Instr:200612060050391      12/06/2006
P:17 of 29     F:$98.50     1:52PM
Tom Murphy                 T20060061819
Westmoreland County RecorderC

and improvements and amounts necessary to pay for Impositions, insurance and prior or other proper charges upon the Mortgaged Property or any part of the Mortgaged Property, as well as dust and reasonable compensation for the services of Mortgagee and for all attorneys, counsel, agents, clerks, servants and other employees by it properly engaged and employed, Mortgagee shall apply the moneys arising as aforesaid first to the payment of the sums due to Mortgagee by Mortgagor under the Loan when and as the same shall become payable, and second to the payment of any other sums required to be paid by Mortgagor under this Mortgage or the other Loan Documents. **FOR SUCH PURPOSES, MORTGAGOR HEREBY AUTHORIZES ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR MORTGAGOR TO SIGN AN AGREEMENT FOR ENTERING AN AMICABLE ACTION OF EJECTMENT FOR POSSESSION OF THE MORTGAGED PROPERTY, AND TO CONFESS JUDGMENT THEREIN AGAINST MORTGAGOR IN FAVOR OF MORTGAGEE, WHEREUPON A WRIT MAY FORTHWITH ISSUE FOR THE IMMEDIATE POSSESSION OF THE MORTGAGED PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER; AND FOR SO DOING THIS MORTGAGE OR A COPY HEREOF VERIFIED BY AFFIDAVIT SHALL BE A SUFFICIENT WARRANT. MORTGAGOR ACKNOWLEDGES THAT BY GRANTING THE FOREGOING RIGHT TO CONFESS JUDGMENT AGAINST MORTGAGOR, MORTGAGOR HAS KNOWINGLY, INTENTIONALLY, VOLUNTARILY AND, ON THE ADVICE OF SEPARATE COUNSEL OF MORTGAGOR, UNCONDITIONALLY WAIVED ANY AND ALL RIGHTS MORTGAGOR HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR A HEARING PRIOR TO THE ENTRY OF A JUDGMENT IN EJECTMENT AGAINST MORTGAGOR;**

(iv)     Mortgagee may, with the irrevocable consent of Mortgagor hereby given and evidenced by the execution of this Mortgage, forthwith obtain appointment of a receiver by any court of competent jurisdiction event jurisdiction without further notice to Mortgagor and without the necessity of proving either the inadequacy of the security or the insolvency of Mortgagor or any other person legally or equitably liable for payment of the Indebtedness, which receiver shall, after such appointment, have the right and authority to enter upon and take possession of the Mortgaged Property, including all personal property used upon or in connection with the Mortgaged Property and all bank accounts containing funds associated with the Mortgaged Property, and to let the Mortgaged Property receive all Rents, payments and revenues, including accounts receivable due or to become due, and apply the same after payment of all necessary charges and expenses, on account of the Indebtedness or otherwise as the court may direct. Such Rents, payments and revenues are, in the event of such default which shall not have been cured or in the event of such foreclosure action, hereby assigned to Mortgagee as additional security for the Indebtedness together with all Leases and all other documents evidencing Rents, payments and revenues, bank accounts and any and all deposits held as security under all Leases. At the option of Mortgagee, such entry and taking possession of the

CRE 03696
CONFIDENTIAL

Instr:200612060050391                12/06/2006
P:18 of 29      F:$90.00              1:52PM
Tom Murphy                      T20050061919
Westmoreland County RecorderC

Mortgaged Property by the receiver shall be accomplished either by actual entry
and possession or by notice to Mortgagor;

(v)    Mortgagee shall have such rights and remedies in respect of so
much of the Mortgaged Property as may, under applicable law, be personal
property, or any part thereof, as are provided by the Code and such other rights
and remedies with respect to such personal property which it may have at law or
in equity or under this Mortgage, including without limitation the right to take
possession of the Mortgaged Property wherever located and to sell all or any
portion of the Mortgaged Property at public or private sale, without prior notice to
Mortgagor, except as otherwise required by law (and if notice is required by law,
after ten (10) days' prior written notice), at such place or places and at such time
or times and in such manner and upon such terms, whether for cash or on credit,
as Mortgagee in its sole discretion may determine. Mortgagee shall apply the
proceeds of any such sale first to the payment of the reasonable costs and
expenses incurred by Mortgagee in connection with such sale or collection,
including reasonable attorney's fees and legal expenses, second to the payment of
the Indebtedness, whether on account. of principal or interest or otherwise as
Mortgagee in its sole discretion may elect, and then to pay the balance, if any, as
required by law. Upon the occurrence of a Default, Mortgagor, upon demand by
Mortgagee, shall promptly assemble any equipment and fixtures included in the
Mortgaged Property and make them available to Mortgagee at a place to be
designated by Mortgagee which shall be reasonably convenient to Mortgagee and
Mortgagor; and

(vi)    Mortgagee may sell any of the Mortgaged Property, not
specifically designated as personal property and subject to clause (v) above, in
such a manner as it deems appropriate and in accordance with any applicable
Legal Requirement. Mortgagee shall apply the proceeds of any such sale first to
the payment of the reasonable costs and expenses incurred by Mortgagee in
connection with such sale or collection, including reasonable attorney's fees and
legal expenses, second to the payment of the Indebtedness, whether on account of
principal or interest or otherwise as Mortgagee in its sole discretion may elect,
and then to pay the balance, if any, as required by law.

(c)    Upon the occurrence of a Default, Mortgagee, in pursuance of the remedies set
forth in this Paragraph 16, or in addition to said remedies, (1) shall be entitled to resort to its
several securities for the payment of the sums secured by this Mortgage in such order and
manner as Mortgagee may deem fit without impairing Mortgagee's lien in, or rights to, any of
such securities and without affecting the person, firm or corporation for the sums secured by this
Mortgage, except to the extent liability of any that the Indebtedness secured by this Mortgage
shall have been reduced by the actual monetary consideration, if any, received by Mortgagee
from the proceeds of such security; (ii) may, in Mortgagee's sole discretion, release for such
consideration, or none, as Mortgagee may require, any portion of the Mortgaged Property
without as to the remainder of the security, in any way impairing or affecting the lien of this
Mortgage, or the priority of this Mortgage, or improving the position of any subordinate
penholder with respect thereto, except to the extent that the Indebtedness shall have been reduced

CRE 03697
CONFIDENTIAL

Instr:200612060059391          12/06/2006
P:19 of 29     F:$98.50          1:52PM
Tom Murphy               T200608061019
Westmoreland County RecorderC

by the actual monetary consideration, if any, received by Mortgagee for such release; and/or (iii) may accept the assignment or pledge of any or all of that property included in the Mortgaged Property which constitutes real property, or any proceedings to foreclose this Mortgage or the satisfaction of record of this Mortgage, the terms hereof shall survive as a security agreement with respect to the security interests created hereby and referred to above until the repayment or satisfaction in full of the other property in place of the Mortgaged Property as Mortgagee may require without being accountable for so doing to any other lien.

(d)     Mortgagor hereby waives and releases (i) all errors, defects and imperfections m any proceedings instituted by Mortgagee under this Mortgage, (ii) all benefit that might accrue to Mortgagor by virtue of any present or future laws exempting the Mortgaged Property, or any part of the proceeds arising from any sale of the Mortgaged Property, from attachment, levy or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment, (iii) all benefits that might accrue to Mortgagor from requiring valuation or appraisement of any part of the Mortgaged Property levied or sold on execution of any judgment recovered for the Indebtedness, and (iv) all notices not elsewhere specifically required in this Mortgage of Mortgagor's default or of Mortgagee's exercise, or election to exercise, any option under this Mortgage. Mortgagor further agrees to waive the issuance and service of process and to enter its voluntary appearance in any action, suit or proceeding brought in connection with a Default and if required by Mortgagee, to consent to the appointment of a receiver or receivers of the Mortgaged Property and of all the earnings, revenues, payments and Rents from the Mortgaged Property.  Mortgagor hereby expressly covenants not to hinder, delay or impede the execution of any power granted in this, Mortgage or delegated to Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted.

(e)     In the event of any breach or threatened breach by Mortgagor of any of the covenants. agreements, terms or conditions contained in this Mortgage, Mortgagee shall be entitled to enjoin such breach or threatened breach and shall have the right to invoke any right and remedy allowed at law or in equity or by statute or other-wise as though other remedies were not provided for m this Mortgage.

(f)     No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent, the lien of this Mortgage upon the Mortgaged Property or any part of the Mortgaged Property, or any liens, rights, powers or remedies of Mortgagee under this Mortgage, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

(g)     In the event that Mortgagee shall have the right to foreclose this Mortgage, Mortgagor authorizes Mortgagee at its option to foreclose this Mortgage subject to the rights, if any, of any tenants of the Mortgaged Property, and the failure to make such tenants parties defendant to any such foreclosure proceeding and to foreclose their rights will not be asserted by Mortgagor as a defense to any proceeding instituted by Mortgagee to collect the Indebtedness or any deficiency remaining unpaid after the foreclosure sale of the Mortgaged Property.

CRE 03698
CONFIDENTIAL

Instr:200612062059391         12/06/2006
P:20 of 29      F:$89.60         1:52PM
Tom Murphy                    T200602061819
Westmoreland County RecorderC

17.    Foreclosure Sales. At any foreclosure sale, the Mortgaged Property and any other collateral securing payment in full of the Indebtedness may be offered for sale for one total price, and the proceeds of such sale may be accounted for in one account without distinction between the items of security or without assigning to them any proportion of such proceeds Mortgagor hereby waiving the t assigning application of any doctrine of marshaling. Mortgagee may sell the Mortgaged Property and said other security in parts or parcels, said sales may be held from time to time, and the power shall not be fully executed until all of the Mortgaged Property and any other security not previously sold shall have been sold. If surplus proceeds are realized from a foreclosure sale, Mortgagee shall not be liable for any interest thereon pending distribution of such proceeds by Mortgagee.

18.    Cure of Defaults by Mortgagee. Mortgagee shall be entitled, but not obligated, to cure a Default after the expiration of any applicable grace period, and shall be reimbursed by Mortgagor for all costs, charges and expenses, including, without limitation, reasonable attorneys' fees, incurred in connection therewith, and all sums for which Mortgagee may be entitled to reimbursement shall be added to the principal sum of the Indebtedness secured hereby, shall add interest at the highest rate set forth in the Note shall be secured by this Mortgage and shall be payable on demand of Mortgagee, whether or not the remaining principal balance of the Note has been declared due and payable.

19.    Secondary Financing; Transfer of Title . (a) Mortgagor shall not, without the prior written consent of Mortgagee, create or permit to accrue upon the Mortgaged Property or any part thereof, any debt or Lien except Permitted Liens.

(b)    Mortgagor shall not, without the prior written consent of Mortgagee, sell convey, assign, transfer or otherwise dispose of (whether by operation of law or otherwise) Mortgagor's interest in the Mortgaged Property, or any part thereof. Any change, transfer, liquidation or diminishment of the ownership of Mortgagor in the Mortgaged Property, or part thereof, or any interest or title therein, legal or equitable, or otherwise, voluntary or involuntary, any sale or attempted sale of all or substantially all of the assets of Mortgagor, without the prior written consent of Mortgagee (including such conditions as Mortgagee may impose) shall be a Default. Any consent granted by Mortgagee shall pertain only to the proposed transaction for which the consent was requested and shall not obligate Mortgagee to approve any further transactions.

20.    Environmental Laws. (a) For purposes of this Mortgage, the following words and terms shall have the following meanings.

"Environment" shall mean any water or water vapor, any land, including land surface or subsurface, air, fish, wildlife, biota and all other natural resources.

"Environmental Claims" shall mean, with respect to any person, any action, suit, proceeding, investigation, notice, claim, complaint, demand, request for information or other communication (written or oral) by any other person (including any governmental authority, citizens group or employee or former employee of such person) alleging, asserting or claiming any actual or potential: (a) violation of Environmental Law, (b) liability under any Environmental Law or (c) liability for investigatory costs, cleanup costs, governmental response costs, natural resources damages, property damages, personal injuries, fines or penalties arising

CRE 03699
CONFIDENTIAL

Instr:200612060059391   12/06/2006
P:21 of 29   F:$88.50   1:62PM
Tom Murphy   T20060261819
Westmoreland County RecorderC

out of, based on, or resulting from, the presence or release into the environment of any Environmental Concern Materials at any location, whether or not owned by such person.

"Environmental Laws" shall mean all federal, state or local laws, statutes, ordinances and codes relating to the protection of the Environment and/or governing the use storage, treatment, generation, transportation, processing, handling, production or disposal of Hazardous Substances, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, as amended, 42 U.S.C. § 9600, et seq. ("SARA"), the Resource Conservation and Recovery Act, as amended, 42 U.S.C. § 6901, et seq. ("RCRA"), the Toxic Substances Control Act as amended 15 U.S.C. § 2601, et seq., the Clean Air Act, as amended, 42 U.S.C. § 7401, et seq., the Clean Water Act, as amended, 49 U.S.C. § 1801, et seq., and the rules, regulations, policies, guidelines, interpretations, decisions, orders and directives of any federal, state and local executive, legislative, regulatory or administrative agency, board or authority with respect thereto.

"Environmental Permits" shall mean all permits, licenses, approvals, authorizations, consents or registrations required by any applicable Environmental Law in connection with the ownership, use and/or operation of the Mortgaged Property for the storage, treatment, generation, transportation, processing, handling, production or disposal of Hazardous Substances.

"Hazardous Substance" shall mean, without limitation, any flammable explosives, radon, radioactive materials, asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls, petroleum and petroleum products, methane, hazardous materials, Hazardous Wastes, Hazardous or Toxic Substances, contaminants or related materials as defined in CERCLA, SARA, RCRA, the Hazardous Materials Transportation Act, as amended (49 U.S.C. Sections 1801, et seq.), or any other applicable Environmental Law and in the regulations adopted pursuant thereto.

"Hazardous Wastes" shall mean all waste materials subject to regulation under CERCLA, SARA, RCRA and any other applicable federal and state Law now to force or hereafter enacted relating to hazardous waste disposal.

"Toxic Substance" shall mean any material which has been shown to have significant adverse effects on human health or which is subject to regulation under the Toxic Substances Control Act, 15 U.S.C. §§ 2601, et seq., applicable state law, or any other applicable federal or state law now in force or hereafter enacted relating to toxic substances. "Toxic Substance" includes, but is not limited to, asbestos, polychlorinated biphenyls (PCBs), and lead-based paints, but does not include small quantities of such materials present on the Mortgaged Property in retail containers.

(b)     Mortgagor represents and warrants to Mortgagee that.

(e)     Mortgagor is not in violation of any Environmental Laws:

(ii)     Neither Mortgagor, nor any agent or independent contractor of Mortgagor, nor, to the best knowledge of Mortgagor, any Predecessor (as defined in CERCLA, as amended) has arranged, by contract, agreement or otherwise (1)

CRE 03700
CONFIDENTIAL

Instr:200612060059391    12/06/2006
P:22 of 29    F:$98.50    1:52PM
Tom Murphy    T200600051019
Westmoreland County RecorderC

for the disposal or treatment of, or (ii) with a transporter for the transport for disposal or treatment of, any Hazardous Substance or Toxic Substance owned, used or possessed by any Predecessor or Mortgagor at the Mortgaged Property;

(iii)    Mortgagor has not "owned or "operated" any facility" as defined by CERCLA, as amended;

(iv)    Mortgagor has not "owned" or "operated" any "facility" at the time any Hazardous Substances were disposed of within the meaning of CERCLA, as amended; and

(v)    Neither Mortgagor nor, to the best of Mortgagor's knowledge, any Predecessor has, nor will Mortgagor have at any time hereafter: (A) stored, had a release, or threat of release of Hazardous Substances or Toxic Substances, on, beneath or about the Mortgaged Property which storage, release or threat of release would warrant action by any authorized person under any Environmental Law, and the Mortgagor is not aware of any condition existing on, beneath or about the Mortgaged Property which would warrant such action, or (B) received any notice from any governmental authority or private or public entity advising any of them that, as a result of a release or threatened release of Hazardous Substances or Toxic Substances it is, or is potentially, responsible for response costs under any Environmental Law or any other costs associated with the clean-up, removal, decontamination or closure of the Mortgaged Property, or (C) received notice of any violation of any Environmental Law, zoning or land use law relating to the Mortgaged Property.

(c)    Mortgagor shall comply with all Environmental Laws and, to the extent necessary for the conduct of its business, shall obtain, maintain, and comply with all Environmental Permits. Mortgagor shall comply with all governmental orders, directives, judgments, orders, decrees, awards, administrative consent orders, settlement agreements or other settlement documents entered into with any administrative or other Governmental Authority concerning compliance with Environmental Laws.

(d)    Mortgagor shall not use or permit the use of the Mortgaged Property for the generation, storage, recycling, processing, transportation, disposal of or release of any Hazardous Substances or Toxic Substance except in compliance with applicable Environmental Laws. Mortgagor shall not use or permit the use of the Mortgaged Property in a manner which would be in violation of any Environmental Laws.

(e)    Mortgagor hereby agrees to defend indemnify and save Mortgagee and its directors officers, agents and employees harmless from and against any and all loss, liabilities, fines, penalties, damages and costs, including, out-of-pocket incidental expenses, reasonable attorneys' fees and expenses and the allocated costs and expenses of in-house counsel and legal staff, which Mortgagee may hereafter suffer, incur or lay out, by reason of any liability arising out of violation or breach of any Environmental Laws or any Environmental claims or proceedings due to the activities of Mortgagor or any other person or entity during Mortgagor's ownership, management, use, control or operation of the Mortgaged Property on, about or-with

CRE 03701
CONFIDENTIAL

Instr:200612060059391        12/06/2006
P:23 of 29      F:$88.50        1:52PM
Tom Murphy              T20060061819
Westmoreland County RecorderC

respect to the Mortgaged Property. This indemnification shall extend to any liability Mortgagee may suffer or incur in connection with any toxic waste clean up ordered by any governmental agency or court in connection with the Mortgaged Property.  This indemnity shall survive payment in full of the Indebtedness or an event of foreclosure under this Mortgage or conveyance of the Mortgaged Property in lieu of foreclosure.

(f)     If a Default shall occur, Mortgagor shall permit such visitation of such persons ("Site Reviewers") as Mortgagee may select in connection with Mortgagee's consideration of enforcement or preservation of rights under this Mortgage or any of the other Loan Documents, to visit its properties and perform such reasonable environmental site investigations and assessments ("Site Assessments") on its properties for the purpose of determining whether there exists on its properties any environmental condition which could result in any liability, cost or expense to the owner or occupier thereof relating to Hazardous Substances. Such Site Assessments may include both above and below the ground testing for environmental damage or the presence of Hazardous Substances and such other tests as may be necessary to conduct the Site Assessments in the opinion of Site Reviewers. Mortgagor will supply to Site Reviewers such historical and operational information, including the results of all samples sent for analysis, correspondence with federal, state and local governmental and regulatory authorities (collectively, "Official Bodies") and previous environmental audits or environmental reviews regarding its properties as are within its possession, custody or control or which are reasonably available to it and which may be reasonably requested by Site Reviewers to facilitate the Site Assessment, and further will make available for meetings with Site Reviewers appropriate personnel employed by Mortgagor having knowledge of such matters. The cost of performing all Site Assessments shall be paid by Mortgagor within five (5) days after demand by Mortgagee, together, if such amount shall not have been paid within such five (5) days, with interest thereon at the highest rate permitted under the Loan.

(g)     At such other times and as often as Mortgagee may reasonably request, Mortgagor will make available at its offices to Mortgagee or its representatives such historical and operational information including the results of all samples sent for analysis, correspondence with Official Bodies, previous environmental reviews conducted prior to the date of this Mortgage and all non-privileged environmental reviews conducted after the date of this Mortgage regarding its properties as are within its possession, custody or control or which are reasonably available to it and which may reasonably be requested by Mortgagee or its representatives, and further will make available for meetings with Mortgagee or its representatives appropriate personnel employed by Mortgagor having knowledge of such matters.

(h)     Promptly upon becoming aware of any Environmental Claim pending or threatened against the Mortgagor, or any past or present acts, omissions, events or circumstances that could form the basis of such Environmental Claim, which if adversely resolved, individually or in the aggregate, could have material adverse effects on the business, operations, condition (financial or otherwise) or prospects of the Mortgagor, the Mortgagor shall give the Mortgagee notice thereof, together with a written statement of an authorized executive officer of the Mortgagor setting forth the details thereof and any action with respect thereto taken or proposed to be taken by Mortgagor.

{M:\CLIENTS\3031\0000 H0383685:1}

CRE 03702
CONFIDENTIAL

Instr:200612060059391          12/06/2006
P:24 of 29      F:$88.50      1:52PM
Tom Murphy                    T20066061619
Westmoreland County RecorderC

21.    Financial Reporting. Mortgagor shall prepare and deliver, or cause to be prepared and delivered, to Mortgagee such financial statements as Mortgagee deems necessary during the term of the Loan. Without limiting the generality of the foregoing, Mortgagor shall deliver or cause to be delivered to Mortgagee, as soon as practicable, but in any event no later than ninety (90) days after each fiscal year of Mortgagor, a balance sheet and related statements of income and cash flows of Mortgagor as of the close of such fiscal year and the results of its operations during such fiscal year, all prepared by Mortgagor in accordance with generally accepted accounting principles consistently applied.

22.    Certain Required Notices. Mortgagor shall promptly notify Mortgagee of the occurrence of any of the following:

(i)    a material adverse change in the financial condition, prospects, assets or properties of Mortgagor;

(ii)    receipt of notice from a Governmental Authority relating to the use or occupancy of the Mortgaged Property or the condition thereof;

(iii)    receipt of notice pertaining to a Default under, or acceleration of, any indebtedness or obligation secured by a lien on all or any Portion of the Mortgaged Property; or

(iv)    commencement of any litigation against Mortgagor or the Mortgaged Property involving a claim of $10,000 or more.

23.    Maintenance of Existence. Mortgagor shall maintain in effect its valid existence as a corporation under the laws of the Commonwealth of Pennsylvania.

24.    Inspection of the Mortgaged Property. Mortgagee shall have the right to enter upon the Mortgaged Property upon reasonable prior notice (except in the case of an emergency or after the occurrence of an Event of Default for which no prior notice shall be required), without hindrance or delay, for the purpose of inspecting the order, condition, and repair of the Mortgaged Property, the Improvements and Chattels.

25.    Miscellaneous. (a) Mortgagor shall upon request from Mortgagee, but in no event later than ten (10) days from the date of request, furnish a duly acknowledged written statement in form satisfactory to Mortgagee setting forth the amount of the Indebtedness then secured by this Mortgage, and stating either that no offsets or defenses exist against such Indebtedness, or if such offsets or defenses are alleged to exist, the nature and extent of such offsets or defenses.

(b)    In the event of the passage after the date of this Mortgage of any law deducting from the value of the Mortgaged Property for the purpose of taxation of any lien on the Mortgaged Property, or changing in any way the laws now in force for the taxation of mortgages, or debts secured by this Mortgage, for state or local purposes (except income taxes attributable to the income of Mortgagee), or the manner of the operation of any such taxes so as to affect the interest of Mortgagee, then and in such event, Mortgagor shall bear and pay the full amount of such taxes.

{M:\CLIENTS\3303}\0000 H0383683:1}                    24

CRE 03703
CONFIDENTIAL

Instr:200612060059391       12/05/2006
P:25 of 29      F:$66.60      1:52PM
Tom Murphy                  T20060061919
Westmoreland County RecorderC

(c)     Wherever used in this Mortgage, unless the context clearly indicates a contrary intent or unless otherwise specifically provided in this Mortgage, the word "Mortgagor" shall mean each of the parties executing this instrument, their successors and assigns or any subsequent owner or owners of the Mortgaged Property, the word "Mortgagee" shall mean the party to whom this Mortgage is given or any subsequent holder or holders, of this Mortgage, the word "Note" shall mean the Note secured by this Mortgage, the word "Person" shall mean an individual, corporation, general partnership, limited partnership, unincorporated association, or any other legal entity; the singular shall include the plural and the plural the singular; the masculine or feminine or neuter general shall each include the other genders.

(d)     Mortgagor shall, at its sole cost and expense, promptly upon request of Mortgagee do all acts and things, including but not limited to the execution and delivery of any further deeds, conveyances, mortgages, assignments and further assurances, deemed necessary by Mortgagee, to establish, confirm, maintain and continue the Lien created and intended to be created by this Mortgage, all assignments made or intended to be made pursuant to this Mortgage, and all other rights and benefits conferred or intended to be conferred on Mortgagee by this Mortgage, and Mortgagor shall pay all costs incurred to Mortgagee in connection therewith, including all filing and recording costs, cost of searches, and reasonable counsel fees incurred by Mortgagee.

(e)     No course of dealing and no delay or failure by Mortgagee to exercise any right, power, privilege or remedy under this Mortgage will be construed to be a waiver of that right, power, privilege or remedy or a waiver of a Default hereunder, nor shall any single or partial exercise of any right, power, privilege or remedy preclude any other or further exercise of any right, power, privilege or remedy.

(f)     In case any provision of this Mortgage shall be found unenforceable or invalid for any reason, the enforcement of any other provision hereof shall not be impaired thereby, and such provision shall be deemed modified to the extent necessary to be enforceable, or if such modification is not practicable, shall be deleted from this Mortgage.

(g)     Any notice or communication required or permitted by this Mortgage shall be in writing and shall be delivered either in person, by facsimile transmission or by registered or certified mail, postage prepaid, return receipt requested, to the addresses first above written, unless such address is effective by written notice hereunder.   All notices and other communications shall be deemed effective when delivered in person, when received by registered or certified mail or overnight courier, when transmitted by facsimile transmission during a business day (with confirmation of receipt) or when refused by the addressee, whichever the case may be.

(h)     All titles and headings to paragraphs or other divisions of this Mortgage are only for the convenience of the parties and shall not be construed to have any effect or meaning with respect to the other contents of such paragraphs or divisions, such other content being controlling as to the agreement between Mortgagee and Mortgagor.

(i)     The obligations hereunder shall bind Mortgagor, its successors and assigns and the benefits hereof shall inure to Mortgagee, its successors and assigns.

CRE 03704
CONFIDENTIAL



Instr:200612060059391    12/06/2006
P:26 of 29    F:$88.50    1:52PM
Tom Murphy    T200680061019
Westmoreland County RecorderC

(j)    This Mortgage is intended as a document under seal and may only be amended, modified, supplemented or waived by a writing signed by Mortgagor and Mortgagee. No course of dealing, course of performance or trade usage, and no parol evidence of any nature shall be used to modify, amend, supplement or waive any of the terms of this Mortgage.

(k)    This Mortgage shall be deemed made under and governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania in all respects without giving effect to its conflict of laws principles, including matters of construction, performance and enforcement. Mortgagor hereby agrees that any action or proceeding against it may be commenced and maintained in any state court in the Commonwealth of Pennsylvania or in the United States District Court for the Western District of Pennsylvania, and Mortgagor further consents to service of process in any such action by the mailing of copies of such process to Mortgagor in the manner and at the address specified in this Mortgage for delivery of notice to Mortgagor, unless such address is changed by written notice hereunder. Mortgagor hereby waives any claim that Westmoreland County, Pennsylvania is an inconvenient forum and that any action or proceeding arising out of or relating to this Mortgage and commenced in any state or federal courts sitting in Westmoreland County, Pennsylvania lacks proper venue. Mortgagor agrees that the courts sitting in the Commonwealth of Pennsylvania and the United States Distract Court for the Western District of Pennsylvania shall have exclusive jurisdiction for any action or proceeding commenced by or through Mortgagor with respect to the subject matter hereof and all controversies and disputes arising hereunder.

IN WITNESS WHEREOF, and intending to be legally bound hereby, Mortgagor has executed and delivered this Open-End Leasehold Mortgage and Security Agreement the day and year first above written.

ATTEST:

By:_____
        Steven Savor, Secretary

COMMONWEALTH RENEWABLE
ENERGY, INC.

By:_____
        Stephen C. Frobouck, President

CRE 03705
CONFIDENTIAL

Instr:200612060059991         12/06/2006
P:27 of 29    F:$88.50       1:52PM
Tom Murphy              T20060061819
Westmoreland County RecorderC

**EXHIBIT A**
**LEGAL DESCRIPTION**

All that certain parcel of land situate partly in the Township of Hempfield and partly in the Township of East Huntingdon, County of Westmoreland and Commonwealth of Pennsylvania being all of Lot 2B in the Plan of Subdivision for Westmoreland County Industrial Development Authority of record in Plan Book Volume 90, pages 291 to 295, being bounded and described as follows:

BEGINNING at a point on the westerly right of way line of L.R. 1015, said point being South 77° 30' 12" East 67.43 feet from the easterly right of way line of L.R. 64125; thence North 77° 30' 12" West 67.43 feet to a point on the northerly right of way of L.R. 64125; thence by a curve to the left having a chord bearing and distance of North 53° 54' 0'5", West, 1177.44 feet, a radius of 1482.38 feet and an arc length of 1210.81 feet to a point; thence North 77° 17' 55" West 2210.05 feet to a point; thence North 36° 59' 04" West 145.08 feet to a point; thence North 32° 11' 15" West 231.97 feet to a point; thence North 12° 49' 12" East 387.90 feet to a point; thence North 29° 31' 08" East 104.40 feet to a point; thence North 12° 49' 09" East 521.56 feet to a point; thence North 10° 36' 10" East 190.22 feet to a point; thence North 16° 49' 10" East 401.82 feet to a point; thence by a curve to the right having a chord bearing and distance of North 40° 41' 00" East, 288.14 feet, a radius of 356.12 feet and an arc length of 296.64 feet to a point; thence by a curve to the right having a chord bearing and distance of North 70° 14' 39" East, 256.65 feet, a radius of 1292.39 feet and an arc length of 257.07 feet to a point; thence South 53° 00' 29" East 132.32 feet to a point; thence by a curve to the right having a chord bearing and distance of North 89° 56' 36" East, 414.11 feet, a radius of 1192.89 feet and an arc length of 416.22 feet to a point; thence North 66° 50' 33" East 104.28 feet to a point; thence by a curve to the right having a chord bearing and distance of South 70° 06' 51" East, 259.27 feet, a radius of 1852.39 feet and an arc length of 259.74 feet to a point; thence South 65° 54' 22" East 84.12 feet to a point; thence by a curve to the right having a chord bearing and distance of South 48° 38' 26" East, 626.84 feet, a radius of 1719.86 feet and an arc length of 630.36 feet to a point; thence South 65° 19' 31" East 104.13 feet to a point; thence by a curve to the right having a chord bearing and distance of South 30° 14' 28" East, 302.38 feet, a radius of 1769.86 feet and an arc length of 302.72 feet to a point; thence South 21° 18' 27" East 384.87 feet to a point; thence South 09° 15' 34" West 83.53 feet to a point; thence South 19° 20' 55" East 700.00 feet to a point; thence South 38° 22' 02" East 177.96 feet to a point; thence South 19° 01' 29" East 1311.97 feet to the place of beginning.

CONTAINING 133.662 acres.

Being designated as part of tax parcel 47-04-00-0-067 and all of tax parcel 50-41-00-0-139.

{M:\CLIENTS\33031\0000 H0383685:1}

CRE 03706
CONFIDENTIAL

```
Instr:200612060069391      12/05/2006
P:28 of 29      F:$88.50      1:52PM
Tom Murphy              T20060261819
Westmoreland County RecorderC
```

COMMONWEALTH OF PENNSYLVANIA         )
                                     )         SS:
COUNTY OF _Allegheny_                 )
                                     )

On this _20th_ day of _November_, 2006, before me a Notary Public, in and for the said County and State, the undersigned officer, personally appeared Stephen C. Frobouck, who acknowledged himself to be the President of Commonwealth Renewable Energy, Inc., a Pennsylvania corporation, and that he as such President, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as President.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
                          Notary Public

My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynn King-Keyho, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires June 24, 2007
Member, Pennsylvania Association of Notaries

{M:\CLIENTS\3303\1\0000_H0383685:1}

CRE 03707
CONFIDENTIAL



Instr:200612060265391    12/06/2006
P:29 of 29    F:$88.50    1:52PM
Tom Murphy    T20060061819
Westmoreland County RecorderC

## CERTIFICATE OF RESIDENCE

       I hereby certify that the precise residence and complete post office address of Mortgagee is 121 McCurdy Drive, Pittsburgh, PA  15235.

_____
Agent of Mortgagee

{M:\CLIENTS\33031\0000 H0383685:1}

CRE 03708
CONFIDENTIAL