IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 14-22724-GLT |
| | ) | |
| COMMONWEALTH RENEWABLE ENERGY, INC., | ) ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Doc. No. ____ |

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO
SECTION 1125 OF THE BANKRUPTCY CODE RELATING
TO THE DEBTOR'S PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE DATED OCTOBER 29, 2014**

Paul J. Cordaro, Esquire
pjc@camlev.com
Campbell & Levine, LLC
1700 Grant Building
Pittsburgh, PA 15219
T: 412-261-0310
F: 412-261-5066

*Counsel for the Debtor*

{C0388873.1 }

**DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO
SECTION 1125 OF THE BANKRUPTCY CODE RELATING
TO THE DEBTOR'S PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE DATED OCTOBER 29, 2014**

This Disclosure Statement (this "Disclosure Statement") describes the terms and provisions of the Plan filed by the Debtor in the Chapter 11 Case pending before the United States Bankruptcy Court for the Western District of Pennsylvania.

The purpose of this Disclosure Statement is to provide "adequate information" as that term is defined in Section 1125 of the Bankruptcy Code, to enable creditors of the Debtor whose claims or interests may be impaired under the Plan to make an informed decision whether to vote in favor, or to vote against, the Plan.[1]  A copy of the Plan is attached to this Disclosure Statement as Exhibit A.  In case of any discrepancy between this Disclosure Statement and the Plan, the provisions of the Plan shall control.  Terms used in this Disclosure Statement but not defined herein shall have the meanings ascribed to them in the Plan.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR'S PERSONNEL AND HAS NOT BEEN SUBJECT TO AN INDEPENDENT AUDIT OR REVIEW.  NO REPRESENTATION CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

## ARTICLE I
## OVERVIEW OF THE PLAN

The Plan divides the Claims against the Debtor and Interests in the Debtor into four (4) Classes:

       Class 1- Priority Non-Tax Claims

       Class 2- Insider Secured Claims

       Class 3- General Unsecured Claims

       Class 4- Interests

The following chart summarizes the treatment for creditors (both those holding classified claims and unclassified claims).  The shareholders of the Debtor shall retain their Interests in the Debtor.

| Class | Description | Treatment | Estimated Recovery |
|---|---|---|---|
| N/A | Administrative Expense Claims (Unclassified) | All claims of professionals for compensation and reimbursement expenses under sections 327, 328, | 100% |

---

[1] The Debtor believes that all Classes of Claims are unimpaired under the Plan.

{C0388873.1 }

|  |  | 330 and 331 shall be paid in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court for paying interim and final compensation and expenses. Subject to this limitation, each holder of an Administrative Expense Claim shall be paid 100 percent (100%) of its Allowed Claim on the Effective Date.<br><br>Notwithstanding the foregoing, the holder of an Administrative Expense Claim may receive such other, less favorable treatment as may be agreed upon by the holder and the Debtor. |  |
|---|---|---|---|
| N/A | Priority Tax Claims (Unclassified) | On the Effective Date, after payment in full of the Allowed Administrative Expense Claims, each holder of an Allowed Priority Tax Claim, if any, shall receive an amount equal to one hundred percent (100%) of the unpaid amount of their respective Allowed Priority Tax Claim. | 100% |
| 1 | Priority Non-Tax Claims | *Unimpaired.* The Debtor believes there are no Priority Non-Tax Claims. Nevertheless, on the Effective Date, after payment in full of the Allowed Administrative Expense Claims, each holder of an Allowed Priority Non-Tax Claim, shall receive an amount equal to one hundred percent (100%) of the unpaid amount of their respective Allowed Priority Non-Tax Claim. | 100% |
| 2 | Insider Secured Claims | *Unimpaired.* The Insider Secured Claims may, in fact, be Interests. The determination with respect to | N/A |

| | | | |
|---|---|---|---|
| | | the Insider Secured Claim of the Andersons will be made in connection with the Anderson Recharacterization Action and/or the Removed Actions. If the Insider Secured Claim of the Andersons is determined by Final Order to be treated as an Interest, then Stephen C. Frobouck and Steven Savor, Jr. will consensually agree to treat their respective Insider Secured Claim as an Interest so that AEI, Stephen C. Frobouck and Steven Savor, Jr. each hold a one-third (1/3) interest in the Debtor. Notwithstanding the foregoing, in the event the Insider Secured Claim of the Andersons is determined by Final Order to be a secured claim, then the net proceeds of the sale of the Facility (after payment of reasonable costs and expenses associated with the sale and payment of Priority Tax Claims) shall be paid to the holders of Insider Secured Claims in accordance with their respective priority under applicable law. | |
| 3 | General Unsecured Claims | *Unimpaired.* On the Effective Date, after payment in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims, each holder of an Allowed General Unsecured Claim shall receive an amount equal to one hundred percent (100%) of the unpaid amount of their Allowed General Unsecured Claim. | 100% |
| 4 | Interests | *Unimpaired.* Subject to the provisions of applicable state law | N/A |

|  |  | and documents of corporate governance, and unless otherwise diluted or reduced pursuant thereto, the Interests of the existing members of the Debtor as of the Petition Date shall be preserved and retained by such shareholders such that Stephen C. Frobouck, Steven Savor, Jr. and the Anderson Parties each hold a one-third (1/3) ownership interest in the Debtor. |  |
|---|---|---|---|

Under the Plan, holders of Classes 1, 3 and 4 claims will receive a distribution equal to 100% of their Allowed Claim or will retain their Interest and, therefore, are unimpaired and are not entitled to vote on the Plan.  The holders of Class 2 claims will have their claims treated as Interests pursuant to this Plan, the Anderson Recharacterization Action and/or the Removed Actions, and therefore, such claims are unimpaired and are not entitled to vote on the Plan.

## ARTICLE II
## VOTING ON THE PLAN

2.1    Who May Vote.

Under the Bankruptcy Code, only classes of claims and interests that are "impaired," as defined in Section 1124 of the Bankruptcy Code, and that receive or retain property under the plan of reorganization are entitled to vote to accept or reject a plan.  A class is impaired if the plan modifies (other than by curing defaults or reinstating the maturity date) the legal, equitable or contractual rights to which the holder of a claim or interest of that class is entitled.  Classes of claims and interests that are not impaired are conclusively presumed to have accepted the plan and thus are not entitled to vote on the plan.  Classes of claims and interest whose holders receive or retain no property under the plan are deemed to have rejected the plan and are not entitled to vote on the plan.

As discussed above, Class 1, Class 3 and Class 4 are unimpaired and will receive one hundred percent (100%) of their claims or, with respect to Class 2, will be treated as Interests. As such, Classes 1, 2, 3 and 4 are not entitled to vote on the Plan.  Because all Classes of Claims are unimpaired, no vote on the Plan is necessary.

## ARTICLE III
## THE DEBTOR'S BUSINESS OPERATIONS

3.1    The General History and Business of the Debtor.  The Debtor is a Pennsylvania corporation formed in August 2006, by Stephen C. Frobouck, Steven Savor, Jr., and William E.

Anderson, for the purpose of facilitating a joint investment in the production of corn ethanol. Messrs. Frobouck, Savor, and Anderson were long-time business partners who had formed, capitalized, and operated numerous business ventures together, always as equal partners. Shortly after its formation, the Debtor entered into a contract with British Petroleum ("BP"), pursuant to which BP agreed to purchase all of the ethanol fuel produced by the Debtor for a five-year period. To perform under the contract, the Debtor needed a place where it could operate an ethanol production facility. The Debtor identified and subsequently acquired the former Sony American Video Glass plant (the "Facility") located in Hempfield and East Huntington Townships, Westmoreland County as a location to manufacture ethanol fuel. The Facility was acquired through and in the name of the Pennsylvania Industrial Development Authority ("PIDA"), from which the Debtor initially leased the Facility. Unfortunately, while the Debtor was developing the Facility for its corn ethanol purposes, the debt financing market for ethanol projects had dramatically changed and the Debtor found that it could not obtain third-party debt financing for its operations. As such, the Debtor's ethanol business never materialized.

       3.2     Shareholders and Officers. Debtor's voting shareholders, each of which own one-third of the company, are Stephen C. Frobouck, Steven Savor, Jr., and Anderson Energy Investments, L.P., ("AEI"), a Pennsylvania limited partnership formed, upon information and belief, for estate planning purposes by William E. Anderson to hold his shares in the Debtor. AEI's general partner is Anderson Energy Management, Inc., a Pennsylvania corporation, whose sole shareholder, until his death in October 2008, was Mr. Anderson. The President of the Debtor is Mr. Frobouck and the Secretary and Treasurer of the Debtor is Mr. Savor.

       3.3     Employees. The Debtor currently has no employees. Frobouck Group, LLC performs management related services for the Debtor at no cost.

       3.4     Assets. As described above, the Debtor acquired a leasehold interest in the Facility on November 21, 2006. In 2010, the Debtor purchased the fee simple interest of the Facility from PIDA.

       3.5     Lease with Reserved Environmental Services, Inc. Due to the collapse of ethanol projects, and in turn, the Debtor's intended operations, the Debtor began seeking alternative means to pay the day-to-day costs, expenses, and real estate taxes associated with the Facility. In furtherance of that goal, on April 1, 2010, the Debtor entered into a lease (the "RES Lease") for a portion of the Facility with an entity known as Reserved Environmental Services, Inc. ("RES"). RES, which is owned in part by Messrs. Frobouck (owns 24% of RES) and Savor (owns 27% of RES), operates a water treatment facility on a portion of the Facility. In particular, RES processes water used in the hydraulic fracturing extraction of natural gas from the region's Marcellus shale formation. RES holds permits from the Pennsylvania Department of Environmental Protection for a National Pollutant Discharge Elimination System (as required by the Federal Clean Water Act), is subject to regular site inspection and has issued a $2.5 million bond in favor of the Pennsylvania Department of Environmental Protection to protect against any discharges from the frac pond. The RES Lease has an initial ten-year term and contains options for RES to extend the lease for four additional ten-year terms. The annual base rent to Debtor under the lease is $360,000 and is in effect a "triple net" lease with RES paying all of the costs associated with the premises it leases from the Debtor and its proportionate share of the real

estate taxes. Pursuant to the RES Lease, RES holds an option to purchase the premises it leases from the Debtor for $6,000,000.

3.6  Anderson Mortgage Foreclosure Action. On October 26, 2010, the Andersons commenced a mortgage foreclosure action against the Debtor (relating to the Facility) in Court of Common Pleas of Westmoreland County at Case No. 7857 of 2010 (the "Foreclosure Action"). In the Foreclosure Action, the Andersons seek to foreclose on the Facility using the Anderson Note and the Anderson Mortgage as a basis for such foreclosure. The Debtor is defending against the Foreclosure Action on various bases, including the fact that the purported loan was satisfied and converted into equity as agreed by Messrs. Frobouck, Savor, and Anderson during a meeting in June 2007. As of the Petition Date, the Foreclosure Action was in the summary judgment stage, but was stayed by virtue of this Chapter 11 Case.

3.7  Frobouck/Savor/Debtor Declaratory Action. The Pennsylvania Rules of Civil Procedure limit the defenses that can be raised in a foreclosure proceeding. Because of this and the facts and circumstances surrounding the Anderson Note and the Anderson Mortgage, on October 19, 2012, Messrs. Frobouck and Savor initiated a declaratory judgment action against Ruth Anderson (wife of William Anderson), Kathy Anderson (their daughter and executor of the Estate of William Anderson), and AEI in the Court of Common Pleas of Allegheny County at Case No. GD-12-020041 (the "Declaratory Action"). In the Declaratory Action, the plaintiffs seek a judicial determination as to the nature of the relationship between Messrs. Frobouck, Savor, Anderson, Mrs. Anderson, and AEI in connection with the Debtor. In other words, Messrs. Frobouck and Savor want the court to determine what the rights and relationships among all of the parties vis-à-vis the Anderson Note, Anderson Mortgage, and the contributions of Messrs. Frobouck and Savor. On July 10, 2014, the Court of Common Pleas granted the Debtor's petition to intervene in the Declaratory Action and denied the defendants' preliminary objections to the Complaint, thereby determining that the plaintiffs did in fact plead sufficient facts upon which relief can be granted. The defendants' answer to the plaintiffs' complaint was due on July 30, 2014, but has yet to be filed. On September 29, 2014, the Debtor and Messrs. Frobouck and Savor, jointly removed the Declaratory Action to the Bankruptcy Court (pending at Docket No. 14-02199). On October 27, 2014, the defendants filed a motion to remand the Declaratory Action to the Court of Common Pleas. The motion to remand is pending before the Bankruptcy Court.

3.8  Anderson Derivative Action. On July 24, 2012, AEI (through Kathy Anderson, in her capacity as President of the general partner of AEI) commenced a derivative action, purportedly on behalf of the Debtor, against Messrs. Frobouck and Savor in the Court of Common Pleas of Allegheny County at Case No. GD-12-012759 (the "Derivative Action"). In the Derivative Action, AEI alleges, *inter alia*, that Messrs. Frobouck and Savor used their positions in the Debtor to engage in self-dealing, usurp corporate opportunities, and unjustly enrich themselves at the expense of Debtor and AEI. Messrs. Frobouck and Savor filed an Answer and New Matter to the AEI complaint in which, *inter alia*, they described the business relationships between Messrs. Frobouck, Savor, and Anderson (as more particularly described above). AEI filed preliminary objections to the New Matter seeking to strike virtually all of these factual allegations, but on July 10, 2014, the Court of Common Pleas overruled virtually all of AEI's preliminary objections. On September 29, 2014, the Debtor and Messrs. Frobouck and

Savor, jointly removed the Derivative Action to the Bankruptcy Court (pending at Docket No. 14-02200). On October 27, 2014, the plaintiffs filed a motion to remand the Derivative Action to the Court of Common Pleas. The motion to remand is pending before the Bankruptcy Court.

3.9    Administrative Expense Claims. As of September 31, 2014, the Debtor is current on its non-professional Administrative Expense Claims. As of September 31, 2014, the Debtor has $60,843.82 in unpaid legal fees and expenses.

3.10    Priority Tax Claims. The Debtor scheduled $14,316.15 in county, township, and school taxes owed to the Diane L. Figg, Tax Collector for East Huntington Township and $486,875.79 in county, township and school taxes owed to Jim Regola, Tax Collector for Hempfield Township.

3.11    Priority Non-Tax Claims. The Debtor does not have any Priority Non-Tax Claims.

3.12    Insider Secured Claims. As listed on the Schedules, the Andersons, Stephen C. Frobouck and Steven Savor, Jr. each hold disputed secured claims in the approximate amount of $11 million each against the Debtor. As detailed throughout this Disclosure Statement and the Plan, the Debtor asserts that each Insider Secured Claim is not a secured claim, but rather an Interest in the Debtor.

3.13    Scheduled General Unsecured Claims.

(a) Scheduled General Unsecured Claims. On its Schedules, the Debtor has projected that there are $7,285.47 in unsecured, pre-petition non-priority claims against the estate.

(b) Claims Registry. As of October 28, 2014, no General Unsecured Claims have been filed in the Claims Registry. The deadline for creditors (other than governmental units) to file a proof of claim is November 12, 2014, and the deadline for governmental units to file a proof of claim is December 31, 2014. As such, creditors may file proofs of claim prior to these deadlines.

3.14    Debtor's Historical Performance. In 2012 and 2013, the Debtor's gross revenue was $589,864.00 and $402,722.00 respectively, which revenue was primarily generated from the RES Lease. Through September, 2014, the Debtor generated $308,884.00 in revenue primarily from the RES Lease in 2014.

3.15    Debtor's Efforts to Consummate Sale of the Facility. The Debtor and/or its real estate broker and counsel have been negotiating with various potential third-party purchasers for the sale of the Facility sufficient to satisfy all Allowed Claims in full and disburse remaining proceeds to the holders of Interests in accordance with their ownership interest (i.e., one-third to each shareholder). In particular, the broker recently identified a potential buyer, well-known in this region for its substantial real estate holdings, and the Debtor is currently negotiating the terms of the sale of the Facility. The most significant challenge the Debtor has encountered

during its negotiations relates to providing the potential buyer comfort related to the frac pond which REC maintains and operates in the ordinary course of its business. While the frac pond has numerous safety measures and RES has issued a $2.5 million bond in favor of the Pennsylvania Department of Environmental Protection to protect against any discharges from the frac pond, the potential buyer has been performing environmental due diligence relating thereto.

## ARTICLE IV
## TREATMENT OF CLAIMS UNDER THE PLAN

4.1     <u>Classified Claims Against the Debtor</u>.

Section 1123 of the Bankruptcy Code provides that a plan of reorganization shall classify the claims and interests of a debtor's creditors. In compliance therewith, the Plan divides Claims and Interests into four (4) Classes and sets forth the treatment for each Class. In accordance with Section 1123(a)(1), Administrative Expense Claims and Allowed Priority Tax Claims have not been classified. The Debtor is also required, under section 1122 of the Bankruptcy Code, to classify Claims against the Debtor into classes that are substantially similar to the other claims and interests in such classes. The Debtor believes that the Plan complied with the provisions of section 1122. If the Bankruptcy Court finds that confirmation of the Plan requires a different classification, the Debtor reserves the right, to the extent permitted by the Bankruptcy Court and the Plan, to make such reasonable modifications of the classifications under the Plan as are required to permit confirmation and to thereafter solicit acceptance to the Plan should a vote become necessary as a result of the reclassification.

<u>Class 1-Priority Non-Tax Claims</u>. The Debtor believes there are no Priority Non-Tax Claims. Nevertheless, on the Effective Date, after payment in full of the Allowed Administrative Expense Claims, each holder of an Allowed Priority Non-Tax Claim, shall receive an amount equal to one hundred percent (100%) of the unpaid amount of their respective Allowed Priority Non-Tax Claim. *Allowed Claims in Class 1 are unimpaired.*

<u>Class 2- Insider Secured Claims</u>. The Insider Secured Claims may, in fact, be Interests. The determination with respect to the Insider Secured Claim of the Andersons will be made in connection with the Anderson Recharacterization Action and/or the Removed Actions. If the Insider Secured Claim of the Andersons is determined by Final Order to be treated as an Interest, then Stephen C. Frobouck and Steven Savor, Jr. will consensually agree to treat their respective Insider Secured Claim as an Interest so that AEI, Stephen C. Frobouck and Steven Savor, Jr. each hold a one-third (1/3) interest in the Debtor. Notwithstanding the foregoing, in the event the Insider Secured Claim of the Andersons is determined by Final Order to be a secured claim, then the net proceeds of the sale of the Facility (after payment of reasonable costs and expenses associated with the sale and payment of Priority Tax Claims) shall be paid to the holders of Insider Secured Claims in accordance with their respectively priority under applicable law. *Allowed Claims in Class 2 is unimpaired.*

<u>Class 3- General Unsecured Claims</u>. On the Effective Date, after payment in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims, each holder of an Allowed General Unsecured Claim shall receive an amount

equal to one hundred percent (100%) of the unpaid amount of their Allowed General Unsecured Claim. *Allowed Claims in Class 3 are unimpaired.*

Class 4- Interests. Subject to the provisions of applicable state law and documents of corporate governance, and unless otherwise diluted or reduced pursuant thereto, the Interests of the existing members of the Debtor as of the Petition Date shall be preserved and retained by such shareholders such that Stephen C. Frobouck, Steven Savor, Jr. and the Anderson Parties each hold a one-third (1/3) ownership interest in the Debtor. *Allowed Interests in Class 4 are unimpaired.*

4.2    Treatment of Unclassified Claims. Section 1123(a)(1) of the Bankruptcy Code does not require classification of certain priority claims against the Debtor. In this Chapter 11 Case, such unclassified claims include Administrative Expense Claims and Allowed Priority Tax.

Administrative Expense Claims. All claims of professionals for compensation and reimbursement expenses under sections 327, 328, 330 and 331 shall be paid in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court for paying interim and final compensation and expenses. Subject to this limitation, each holder of an Administrative Expense Claim shall be paid 100 percent (100%) of its Allowed Claim on or before the Effective Date.

Notwithstanding the foregoing, the holder of an Administrative Expense Claim may receive such other, less favorable treatment as may be agreed upon by the holder and the Debtor.

Allowed Priority Tax Claims. On the Effective Date, after payment in full of the Allowed Administrative Expense Claims, each holder of an Allowed Priority Tax Claim, if any, shall receive an amount equal to one hundred percent (100%) of the unpaid amount of their respective Allowed Priority Tax Claim.

4.3    Conditions Precedent to Confirmation and Consummation of the Plan.

(a) Confirmation of the Plan cannot occur until all of the substantive requirements of confirmation under the Bankruptcy Code have been satisfied pursuant to section 1129 of the Bankruptcy Code.

(b) The occurrence of the Effective Date of the Plan is subject to satisfaction of the following conditions precedent each of which may be waived (except 4.3(b)(iii)) by the Debtor:

  (i)    The Confirmation Order, in form and substance, reasonably acceptable to the Debtor, shall have been entered by the Clerk of the Bankruptcy Court, and such Order shall have become a Final Order;

{C0388873.1 }                                9

    (ii)    All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions hereof shall have been effected;

    (iii)    The statutory fees owing to the United States Trustee have been paid in full;

    (iv)    Any alteration or interpretation of any term or provision of the Plan by the Bankruptcy Court pursuant to Section 13 of the Plan shall be reasonably acceptable to the Debtor;

    (v)    The Debtor shall have closed on the sale of the Facility (or a portion thereof) sufficient to pay Allowed Claims (except Insider Secured Claims) in full.

    (vi)    The Debtor shall have received all authorizations, consents and regulatory approvals that are determined to be necessary to implement the Plan.

    4.4    <u>Procedures for Treating Disputed Claims</u>. The Debtor and/or any party-in-interest shall be entitled to, and reserves the right to, object to Administrative Expense Claims and shall have the right at all times to make and file objections to all Claims, provided however, if a Claim is specifically Allowed under the Plan or in any Order of the Bankruptcy Court, then there shall be no right to object to such Allowed Claim. The Debtor shall file all objections to Claims, including the Insider Secured Claims, Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and General Unsecured Claims, that are the subject of proofs of claim or requests for payment filed with the Bankruptcy Court as soon as practicable, but in no event later than (a) ninety (90) days after the Confirmation Date, or (b) such later date as may be approved by the Bankruptcy Court.

    4.5    <u>Treatment of Executory Contracts and Unexpired Leases</u>. The Plan constitutes a motion by the Debtor to assume, as of the Effective Date, the RES Lease. Additionally, the Plan constitutes a motion by the Debtor to reject, as of the Effective Date, all other executory contracts and unexpired leases to which the Debtor is a party, except for the RES Lease and any executory contract or unexpired lease that is subject of a separate motion filed under section 365 of the Bankruptcy Code by the Debtor prior to the Confirmation Hearing.

    4.6    <u>Bar to Rejection Damage Claims</u>. In the event that the rejection of an executory contract or unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or its property or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served on counsel for the Debtor on or before thirty (30) days after the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court, all Allowed rejection claims shall be afforded status as General Unsecured Claims.

ARTICLE V
ADMINISTRATION OF THE CHAPTER 11 CASE

     5.1    <u>Key Motions Filed by the Debtor</u>.  Since the Petition Date, the Debtor has filed a variety of motions.  The key motions, all of which the Bankruptcy Court granted, are described below.

     (a)  <u>Application for Authority to Retain and Employ Counsel</u>.  The Debtor sought authority to retain Campbell & Levine, LLC to represent and assist it in the Chapter 11 Case as its bankruptcy counsel.  The Debtor further sought authority to engage The Law Office of Kenneth B. Burkley as special counsel to represent and assist the Debtor in its real estate assessment appeal regarding the Facility pending in Westmoreland County.

     (c)  <u>Application for Authority to Retain and Employ Real Estate Broker</u>.  The Debtor sought authority to retain Langolz Wilson Ellis, Inc. as it real estate broker for the purpose of marketing and selling the Facility.

     5.2    <u>Andersons' Motion to Dismiss and Motion for Relief from Stay</u>.  On August 26, 2014, the Andersons filed a Motion to Dismiss the Chapter 11 Case and a Motion for Relief from Stay or, in the Alternative, for Adequate Protection.  On September 15, 2014, the Debtor filed responses in opposition to both motions.  Messrs. Frobouck and Savor also filed responses in opposition to both motions.  Both motions are pending before the Bankruptcy Court.

ARTICLE VI
IMPLEMENTATION OF THE CONFIRMED PLAN

     6.1    <u>Funding of Plan and Sale of Assets</u>.  In one or more transactions, the Debtor will sell substantially all of its assets pursuant to Bankruptcy Code §§ 363 and 1123, including the Facility, on terms and conditions acceptable to the Debtor, <u>provided</u> <u>however</u>, that any sale shall be subject to prior approval of the Bankruptcy Court and shall be subject to higher and better offers.  The Debtor shall file a motion seeking approval of any such sale(s) and may file a motion seeking bidding procedures in connection with any such sale(s).

     6.2    <u>Anderson Recharacterization Action</u>.  The Debtor anticipates that it and/or another party-in-interest will file the Anderson Recharacterization Action, which will seek to recharacterize or otherwise disallow (and strip the lien related thereto) the Insider Secured Claim of the Andersons.

     6.3    <u>Payments and Transfers</u>.  As detailed in the Plan, the Debtor shall make payments to holders of Allowed Claims on the Effective Date.

     6.4    <u>Post-Confirmation Rights and Obligations</u>.  All rights and obligations of the Debtor under the Plan that exist or continue on or after the entry of the Confirmation Order:

(a) <u>General Powers</u>. The Reorganized Debtor shall have the power and authority to (A) prosecute and resolve objections to Disputed Claims; (B) perform other such functions as are provided in the Plan; (C) perform all duties and obligations of the Debtor under the Bankruptcy Code, Bankruptcy Rules and Orders of the Bankruptcy Court; and (D) Administer the closure of the Chapter 11 Case.

(b) <u>Payments and Transfers</u>. As detailed in section 6 of the Plan, commencing on the Effective Date, or as soon thereafter as is reasonably practicable, the Reorganized Debtor shall make payment to holders of Allowed Claims in the manner set forth in the Plan.

(c) <u>Administration of Taxes</u>. The Reorganized Debtor shall be responsible for having all tax returns of the Debtor prepared and filed by an accounting professional.

(d) <u>Claims Administration, Prosecution of Objection to Claims, and Plan Distributions</u>. As set forth in section 8 of the Plan, the Reorganized Debtor shall have the power and authority to prosecute and resolve objections to Claims. On and after the Confirmation Date, the Reorganized Debtor shall continue as the party in interest in all pending Claims objections filed by the Debtor. The Reorganized Debtor shall have the right, power and authority to retain and assert all defenses, rights of setoff and counterclaims with respect to each of the foregoing. The Reorganized Debtor shall also have the power and authority to hold, manage and distribute Plan distributions to the holders of Allowed Claims consistent with the applicable provisions of the Plan.

## ARTICLE VIII
## LEGAL EFFECTS OF THE PLAN

8.1 <u>Vesting of Assets in Reorganized Debtor</u>. On the Confirmation Date, all assets of the Debtor and its estate, including the Facility, shall be transferred to and vest in the Reorganized Debtor.

8.2 <u>Discharge of the Debtor</u>. Except as provided in the Plan or the Confirmation Order, confirmation will act as a discharge of any and all Claims against, and all debts and liabilities of, the Reorganized Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, whether or not (i) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is Allowed pursuant to Section 502 of the Bankruptcy Code, or (iii) the holder of the Claim based on such debt has accepted the Plan. Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all persons who have held, currently hold or may hold a debt, Claim or Interest discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt, Claim or Interest: (i) commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor, or its successors or its property; (iii) creating, perfecting or enforcing any lien or encumbrances

against the Debtor, the Reorganized Debtor or its successors or its property; and (iv) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## ARTICLE IX
## CHAPTER 7 LIQUIDATION ANALYSIS

The Bankruptcy Code requires that each holder of an impaired Allowed Claim either (a) accepts the Plan, or (b) retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. In this case, all classes of creditors are unimpaired, that is, all classes of creditors will receive the full amount of the value of their respective Allowed Claim under the provisions of the Plan. Therefore, the first step in a liquidation analysis is unnecessary. In that step, there is a determination of the dollar amount that would be generated from the liquidation of the Debtor's assets and the cash held by the Debtor at the commencement of a chapter 7 case. The assets to be liquidated in a chapter 7 are the same assets being sold by the Debtor under the Plan. The Debtor has incentive to maximize the value of the assets during any sale, insofar as it intends to disburse proceeds to holders of Interests after satisfaction of all Allowed Claims. A sale of the assets of the Debtor will yield at least as much as the proceeds of a liquidation. The Debtor's assets are sufficient to pay all Allowed Claims in full and, therefore, a liquidation will only serve to incur the additional costs of a liquidation, which would not be incurred in a sale in the ordinary course of business. Therefore a liquidation would net less proceeds for payment to creditors than will be netted under the Plan.

IN A CHAPTER 7 CASE, THE DEBTOR'S CASH AND THE PROCEEDS OF ANY SALE OF THE DEBTOR'S ASSETS WOULD BE REDUCED BY THE AMOUNT OF THE CHAPTER 7 EXPENSES (WHICH WOULD HAVE THE HIGHEST PRIORITY) WHICH, IN TURN, WOULD DILUTE THE AMOUNT AVAILABLE TO HOLDERS OF ALLOWED CLAIMS.

Based on the foregoing, the Debtor has determined that confirmation of the Plan is in the best interest of all Creditors and will allow greater recovery than would be allowed if the Debtor was liquidated under Chapter 7.

                                                    Respectfully submitted,

COMMONWEALTH RENEWABLE ENERGY, INC.

Dated: October 29, 2014                By:   /s/ Stephen C. Frobouck
       Pittsburgh, Pennsylvania          Stephen C. Frobouck, President

CAMPBELL & LEVINE, LLC

By:   /s/ Paul J. Cordaro
Paul J. Cordaro, Esq.
PA I.D. No. 85828
pjc@camlev.com
310 Grant Street
1700 Grant Building
Pittsburgh, PA 15219
Tel: (412) 261-0310
Facsimile: (412) 261-5066

*Counsel to the Debtor*