FILED

APR 21 2016

CLERK, U.S. BANKRUPTCY COURT
WEST DIST. OF PENNSYLVANIA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 14-22724-GLT |
| COMMONWEALTH RENEWABLE ENERGY, INC., | Chapter 11 |
| Debtor. | |
| RUTH F. ANDERSON and KATHY L. ANDERSON, as the executor of the ESTATE OF WILLIAM E. ANDERSON, | Related to Dkt. No. 43 |
| Movants, | |
| v. | |
| COMMONWEALTH RENEWABLE ENERGY, INC., | |
| Respondent. | |

**MEMORANDUM OPINION**

This matter is before the Court upon the *Motion to Dismiss Chapter 11 Case* (the "Motion to Dismiss") filed by Ruth F. Anderson and Kathy L. Anderson, as the executor of the estate of William E. Anderson (together, the "Andersons").[1] The *Motion to Dismiss* requests dismissal of the above-captioned bankruptcy case pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"). Both the Debtor, Commonwealth Renewable Energy, Inc. ("Commonwealth") and two of its principals, Stephen Frobouck and Steven Savor, filed a response in opposition to the *Motion to Dismiss*.[2] Although the parties agreed to defer a

---

[1] Dkt. No. 43.

[2] Dkt. Nos. 57 and 62.

decision on the *Motion to Dismiss* pending resolution of various other disputes, the matter is now ripe for adjudication.

**I.**

Commonwealth was formed for the purpose of developing an ethanol production facility on an approximately 133-acre tract of land in New Stanton, Pennsylvania (the "Property").[3] The envisioned project proved unsuccessful and the Property now sits unoccupied with the exception of a 10-acre portion that is leased by Reserved Environmental Services, LLC ("RES"), an entity controlled by Frobouck and Savor. At all relevant times following its inception, the equity interests in Commonwealth were controlled by Frobouck, Savor, and either William E. Anderson or his estate, in equal 1/3 shares.

In 2006, William and Ruth Anderson advanced $7,022,423.37 to Commonwealth. The advance was secured by a mortgage and security agreement which granted the Andersons a lien upon, among other things, the Property. Following William Anderson's untimely passing in October 2008, his estate has been embroiled in a series of highly contentious battles with Commonwealth, Frobouck, and Savor which spawned litigation in several different forums.[4] At the heart of these disputes, the parties clash on the proper characterization to be given to the Andersons' cash advance. The Andersons claim the funds were provided as a loan secured by

---

[3] The facts summarized in this Opinion are limited to those relevant to the consideration of the pending motions. A more detailed recitation of the facts may be found within this Court's November 4, 2015 memorandum opinion. Anderson v. Commonwealth Renewable Energy, Inc. (In re Commonwealth Renewable Energy, Inc.), 540 B.R. 173 (Bankr. W.D. Pa. 2015) (the "November Opinion").

[4] See Anderson, et al. v. Commonwealth Renewable Energy, Inc., No. 08-mc-00345-TFM (W.D. Pa. filed Dec. 16, 2008); Commonwealth Renewable Energy, Inc. v. Anderson, et al., No. 10-CJ-07857 (C.P. Westmoreland filed Oct. 26, 2010) an action in mortgage foreclosure against the Property (the "Foreclosure Action"); Anderson Energy Investments, L.P. v. Frobouck, et al., No. GD-12-012759 (C.P. Allegheny filed July 24, 2012) an action alleging claims of self-dealing, usurpation of corporate opportunities, and unjust enrichment by certain Commonwealth shareholders (the "Derivative Action"); and Frobouck et al. v. Anderson, et al., No. GD-12-020041 (C.P. Allegheny filed Oct. 19, 2012) an action requesting a court determination as to the rights and relationships between the parties regarding their respective contributions to Commonwealth (the "Declaratory Judgment Action").

substantially all of Commonwealth's assets. By contrast, Commonwealth, Frobouck, and Savor contend that note and mortgage delivered to the Andersons were part of an equity contribution made by Anderson, effective as of the time the instruments were created, or thereafter purportedly pursuant to a modification agreement.

Commonwealth commenced this bankruptcy case on July 3, 2014, for the purpose of developing a liquidating plan of reorganization whereby it would sell the Property (subject to the RES lease) and distribute the proceeds to creditors and parties in interest according to their priorities.[5] To assist with the marketing and sale of the Property, Langholz Wilson Ellis, Inc. was appointed to serve as Commonwealth's real estate broker on July 31, 2014.[6] Commonwealth filed its liquidating plan and related disclosure statement on October 29, 2014.[7]

Because most of the pending claims in the state court actions were stayed by the bankruptcy filing, the parties opted to bring most of their disputes here. Both the Derivative Action and Declaratory Judgment Actions were removed to this Court by Commonwealth, Frobouck, and Savor. The Andersons filed motions seeking to remand both of the removed actions back to state court. Additionally, the Andersons filed the *Motion to Dismiss*, a motion for the appointment of a chapter 11 trustee, and a motion seeking relief from the automatic stay to proceed with the Foreclosure Action in state court (the "Stay Relief Motion"). Commonwealth, Frobouck, and Savor opposed all of the requested relief sought by the Andersons.

---

[5]  See *Debtor's Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Relating to the Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated October 29, 2014* [Dkt. No. 79] and *Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated October 29, 2014* (the "Plan") [Dkt. No.80].

[6]  Dkt. No. 30.

[7]  Dkt. Nos. 79, 80.

Because a decision on the *Stay Relief Motion* would impact the rest of the case, and given the number of contested matters at issue, the parties agreed to defer consideration of all other pending matters until the Court issued a ruling on the *Stay Relief Motion*. Prior to conducting an evidentiary hearing on the motion, the Court referred the matter to mediation for the purpose of exploring whether the parties could reach a consensual resolution of their dispute.

The parties were unable to reach an agreement, thereby necessitating a two-day evidentiary hearing. After receiving post-trial briefing, the Court issued its *November Opinion* and related Order, finding that the Andersons held a valid secured claim against the Property and granting the Andersons' relief from the automatic stay to resume their mortgage foreclosure action in state court.[8] Commonwealth, Frobouck, and Savor appealed the decision, which remains pending before the United States District Court for the Western District of Pennsylvania.

Following the Court's ruling on the *Stay Relief Motion*, the parties again attempted to resolve their disputes. Initially, the parties held informal discussions. When this failed, the Court again referred them to mediation for another attempt at settlement. The mediation was, again, ultimately unsuccessful and the parties resumed their litigation posture.

In light of the Court's finding that the Andersons held a valid secured claim against the Property, the plan offered by Commonwealth was rendered unconfirmable and it was withdrawn at Commonwealth's request.[9] Because the exclusivity period has expired, any party is free to formulate a plan of reorganization in this case.[10] As of this date, no other plan of reorganization or liquidation has been proposed.

---

[8] In re Commonwealth Renewable Energy, Inc., 540 B.R. 173 (Bankr. W.D.Pa. 2015).

[9] Dkt. No. 339.

[10] See 11 U.S.C. § 1121. Section 1121(b) provides an exclusive period within which only the debtor may propose a plan of reorganization.

4

Most recently, the Andersons have focused their efforts on seizing the rents generated from the RES lease. Through their supplemental *Motion for Relief from Stay* (the "Second Stay Relief Motion"), the Andersons seek authority to exercise any rights and remedies they may have under their mortgage, including the right to collect rents generated from the Property.[11] The *Second Stay Relief Motion* was prompted by a Court Order which held that the stay relief previously granted to the Andersons was limited to what was requested: the ability to continue pursuit of an action in mortgage foreclosure.[12] Commonwealth, Frobouck, and Savor oppose the relief requested in the *Second Stay Relief Motion*.

The Court conducted a hearing on April 7, 2016 to consider the *Motion to Dismiss*. At that proceeding, counsel for Commonwealth, Frobouck, and Savor expressed no opposition to dismissal provided that it did not impact their ability to pursue the pending appeal.

## II.

The Court has jurisdiction over these matters under 28 U.S.C. §§1334 and 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III.

Section 1112(b) of the Bankruptcy Code requires that whenever a bankruptcy court finds sufficient cause, a chapter 11 case must either be dismissed or converted to a chapter 7 proceeding, depending upon whichever is in the best interests of creditors and the estate.[13] This requires the Court to apply a two-step analysis. It must first determine whether "cause" exists and, if so, the Court next must decide whether conversion or dismissal is preferable based

---

[11] Dkt. No. 364.

[12] Dkt. No. 342.

[13] 11 U.S.C. § 1112(b).

on the best interest of creditors and the estate.[14]  The decision whether to dismiss or convert a bankruptcy case lies with the sound discretion of the Court.[15]

The moving party bears the burden of establishing cause for dismissal by a preponderance of the evidence.[16]  To assist with that determination, section 1112(b)(4)(A) provides a non-exclusive list of factors which may constitute "cause" for dismissal or conversion.[17]  The Third Circuit has determined that cause exists when there is not "a reasonable possibility of a successful reorganization within a reasonable period of time."[18]  If the debtor has no viable prospect of confirming a plan, then there is "no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy legal rights."[19]  As the Third Circuit has noted, a bankruptcy court is "not bound to clog its docket with visionary or impracticable schemes for resuscitation."[20]

Cause exists for dismissal or conversion under § 1112(b) because, among several reasons, Commonwealth has no reasonable possibility of a successful reorganization or liquidation within a reasonable time.  Commonwealth is a non-operating entity with zero employees.  Its only material assets consist of the Property, the lease with RES, and the cash

---

[14]    In re American Capital Equipment, LLC, 688 F.3d 145, 161 (3d Cir. 2012).

[15]    In re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir. 1999).

[16]    In re Forever Green Ath. Fields, Inc., 804 F.3d 328, 335 (3d Cir. 2015).

[17]    11 U.S.C. § 1112(b)(4).

[18]    American Capital, 688 F.3d at 162 citing In re Brown, 951 F.2d 564, 572 (3d Cir. 1991).

[19]    In re Brown, 951 F.2d 564, 572 (3d Cir. 1991).

[20]    Id. (quoting Tenn. Publ'g Co. v. Am. Nat'l Bank, 229 U.S. 18, 22 (1936)

derived from the lease revenues.[21] Although Commonwealth had proposed a liquidating plan to sell the Property, that plan was rendered unconfirmable by the *November Opinion* and related Order and was withdrawn.[22] Since that time, Commonwealth has been unable to provide an alternative plan to move this case forward. While acknowledging that any modified plan will require a significant equity infusion from Frobouck and Savor, it appears that the majority shareholders are unwilling to contribute the necessary funding until all appeals are exhausted. For their part, the Andersons are unwilling to formulate their own liquidating plan, notwithstanding the fact that exclusivity has lapsed. Thus, it is unlikely that a confirmable plan could be offered for an indefinite period while the matter wends its way through the appellate process.

Without a valid bankruptcy purpose,[23] Commonwealth cannot remain in bankruptcy indefinitely simply because it believes bankruptcy can effectively and efficiently resolve the issues currently pending before a state court. The Court has not been presented with credible evidence to suggest that a prospective sale will occur in the near future to address the pending issues in this case. A broker has been marketing the property for over two years with no significant progress towards the consummation of a sale. Because of this, the bankruptcy case has not maximized the value of the estate in any measureable way. Rather, the estate continues to incur substantial administrative expenses without the prospect of any foreseeable benefit on

---

[21] The Andersons also believe the claims brought in the Derivative Action have value. As the record has not been fully developed concerning the merits of these claims, the Court does not have the ability to quantify a value, but finds that such an exercise is unnecessary for the purposes of addressing the pending motions.

[22] Dkt. No. 339.

[23] Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 453 (1999) (the two main functions of the bankruptcy law are to preserve going concerns and maximize the property available to satisfy creditors).

7

the horizon.[24] Commonwealth does not dispute that a sale of the real property, with or without the inclusion of an attendant lease, is the driving force behind any proposed plan.

Recognizing that the bankruptcy forum affords the parties an ability to address multiple issues arising in this case, the Court directed the parties to engage in mediation efforts on two separate occasions. The parties' most recent attempt at mediation spanned a four-week period. Despite representations that the parties acted in good faith, a deal could not be reached and the mediation concluded. The Court has given the parties every opportunity to obtain a consensual resolution of these matters, as such a result represented the best path forward for Commonwealth. Because the attempts to reach a settlement were largely unsuccessful, there is no basis for the Court to exercise jurisdiction over estate assets in light of its *November Opinion* and Order granting the Andersons relief from the automatic stay to pursue a foreclosure on Commonwealth's primary asset.

Having found cause, the Court must now determine whether conversion or dismissal best serves the interests of creditors and the estate. Since its inception, this bankruptcy has exclusively been a dispute between two warring factions, pitting the Andersons against Frobouck and Savor. For years, the parties litigated their issues in multiple state courts until Commonwealth was compelled to seek bankruptcy relief. With the filing, all of the material disputes were brought to this forum while Commonwealth sought time to effectuate a sale of the Property.

---

[24] As of the date of this Opinion, no administrative claims have been filed. However, the most recent monthly report of Commonwealth indicates that it continues to pay $8,125 in quarterly fees to the United States Trustee under 28 U.S.C. § 1930(a)(6), liability and umbrella insurance premiums, and miscellaneous expenses. The latest monthly report also shows accrued but unpaid professional fees of $275,671.90. [Dkt. No. 374]. The unpaid professional fees at the time of filing the petition were $13,730.42. [Dkt. No. 38]. Given that Commonwealth's counsel remained actively involved in all litigation pending in this case and the related appeal, the Court anticipates that an administrative claim by Commonwealth's professionals may be substantial.

During the nearly two years this case has been pending, no other creditors have made a material appearance. Indeed, only one proof of claim was filed by a creditor not involved in these disputes.[25] Because that creditor, the Hempfield Township Tax Collector, holds a secured lien against the Property which primes any lien, claim, or interest held by the other parties, it will remain protected regardless of whether this case is dismissed or converted. It does not appear, therefore, that any interests of third party creditors exist that are not already protected by the litigants in the state court proceeding. As a result, the Court concludes that the interests of third party creditors will neither be impaired by dismissal of the case, nor benefitted in the foreseeable future by the continuation of the bankruptcy proceedings.

Finally, the Court finds no conceivable advantage is gained by converting the case to chapter 7. The Court previously denied a request for the appointment of a chapter 11 trustee and finds no reason to conclude that a chapter 7 trustee would add value sufficient to offset the associated cost.[26] Indeed, it appears that no valid purpose is served by keeping the case in chapter 7.

Furthermore, the Court has granted the Andersons stay relief to pursue a foreclosure of the Property. If the case were converted rather than dismissed, the Court would need to address the merits of the *Second Stay Relief Motion* which seeks broad authority to "take any and all actions necessary to enforce [their] rights and remedies under the Mortgage and Note[,]" including the right to seize the rents generated from the Property. Based on the current status of the case and its prior rulings, the Court would have no conceivable basis to deny the expansive stay relief sought by the Andersons, thereby permitting them to pursue the rents just as

---

[25] See Claim No. 4-1.

[26] *Memorandum Opinion on Motion for Reconsideration of Order Denying Motion to Appoint a Chapter 11 Trustee.* [Dkt. No. 393].

9

if the case was dismissed.[27] A chapter 7 trustee therefore would have no significant assets to administer and no funds to pay expenses. Since it does not materially advance the interests of any creditors or parties in interest, conversion would only delay the case and generate unnecessary fees against the estate.

### IV.

In its present condition, this bankruptcy case resembles the walking dead. If allowed to continue in chapter 11, the case would languish on the Court's docket without any conceivable endgame in sight.[28] Because there is no reasonable likelihood of reorganization in the foreseeable future and the parties can adequately pursue their interests in state court, the Court finds ample cause for the case to be dismissed pursuant to section 1112(b) of the Bankruptcy Code.[29]

---

[27] It was previously determined that the Andersons possess a claim in excess of $7,000,000 which is secured by the Property. November Opinion, 540 B.R. at 193. The claim is also secured by any rents or revenues generated by the Property, including the rents paid by RES on account of its lease. See Anderson Mortgage at ¶¶ 10(b), 16(b). [Dkt. No. 39, Ex. 1 and 2]. Because the combined value of the Property and the rents is substantially less than $7,000,000, Commonwealth holds no equity in these assets.

The Court also concluded that the Property is not necessary for an effective reorganization because there is no reasonable possibility of a successful liquidation within a reasonable time. Id. This finding has only been reinforced with the passage of time.

[28] The Court observes that, based on its acquaintance with the facts and the litigation posture of the parties, it is likely that the parties will exhaust all available avenues in the appeals process. This may involve an indefinite delay in further proceedings in this Court, while administrative costs continue to climb.

[29] Commonwealth, Frobouck, and Savor consent to dismissal provided that it does not prejudice or moot the appeal currently pending with the District Court. In dismissing this case, the Court makes no determination as to how this decision may impact the pending appeal. This Court previously denied a request to stay its *Order* granting relief from stay to the Andersons while the appeal remained pending. [Dkt. Nos. 335]. While it is true that this Court no longer has jurisdiction over the subject matter at issue in the pending appeal (*i.e.* the Order granting stay relief to the Andersons), the "appeal of one ruling does not stay the entire bankruptcy case." See In re Washington Mutual, Inc., 461 B.R. 200, 217-18 (Bankr. D. Del. 2011), *vacated in part* 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012). This Court retains jurisdiction over other matters at issue in the bankruptcy case that are ripe for adjudication. To hold otherwise would "have the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner." In re Whispering Pines Estates, Inc., 369 B.R. 752, 758 (1st Cir. BAP 2007).

The *Second Stay Relief Motion* is denied as moot because the bankruptcy case is dismissed.

The Court will enter appropriate Orders consistent with this Opinion.

Dated: April 21, 2016

_____
GREGORY J. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

<u>Case administrator to mail to:</u>
Debtor
Douglas Campbell, Esq.
Kirk Burkley, Esq.
Robert O Lampl
Office of the United States Trustee